ROYAL INSURANCE COMPANY
OF AMERICA, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 97Civ.6596(SHS)(JCF).

United States District Court,
S.D. New York.

March 25, 1998.

Craig S. English, Tom Grasso, Kennedy, Lillis, Schmidt & English, New York, NY, for Plaintiff.

Joan L. Califf, Assistant United States Attorney, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

On the night of September 21–22, 1995, the Nighthawk III, a 45–foot fishing vessel, ran aground on a breakwater while entering Ventura Harbor in California. The vessel's insurer, Royal Insurance Company of America ("Royal"), subsequently filed this action for damages against the United States, contending that the United States Coast Guard had been negligent in maintaining the light that marks the breakwater. The government now moves pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Central District of California for the convenience of the parties and in the interest of justice. The motion raises two novel issues: (1) whether the domicile of the insurer or that of its insured is more relevant in evaluating the convenience of the parties, and (2) whether the relative expertise of the federal courts in the alternative venues is an appropriate consideration.

*Background*

The Nighthawk III is a fishing boat owned by Gregory B. Artz. Complaint ¶ 5. At approximately 2400 hours on September 21, 1995, Mr. Artz was aboard the vessel as it was returning to Ventura Harbor. Complaint ¶ 8. The entrance to the harbor is marked by Ventura Marina South Breakwater Light No. 3, which is maintained by the United States Coast Guard. Complaint ¶ 6. The Nighthawk III ran aground, and the plaintiff maintains that the accident occurred because the breakwater light was either extinguished or only dimly lit at the time. Complaint ¶¶ 7, 8.

When the vessel grounded, Mr. Artz made a distress call that was received by the Ventura Port District Harbor Patrol. Notice of Motion, Exh. D. The Harbor Patrol dispatched a boat to the scene and towed the Nighthawk III to the Ventura Boat Yard. Notice of Motion, Exh. D. Thereafter, the vessel was inspected by the plaintiff's surveyor, Skip Riley.

Royal, the vessel's insurer, apparently paid approximately $70,000 to Mr. Artz to cover the damage sustained. Notice of Motion, Exh. B. The office responsible for Royal's marine subrogation claims is located in Manhattan, Affidavit of Alice E. Teal dated Jan. 22, 1998 ¶ 2, and Royal accordingly filed the instant action in the Southern District of New York.

The government now moves to transfer the case to the Central District of California, since that is the site of the accident as well as the residence of most witnesses. Royal opposes the motion and contends that, as the plaintiff, its choice of forum should be honored and that the law concerning maintenance of navigational aids is more developed in this jurisdiction.

*Discussion*

The statute governing transfer of cases provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Here, there is no dispute that this action could have been filed in the Central District of California. Accordingly, the determination whether to transfer on grounds of convenience lies in the broad discretion of the district court. *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir.1992). However, the burden of demonstrating the desir-

ability of transfer rests with the moving party. *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir.1989); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 95 (S.D.N.Y.1995).

In evaluating a *forum non conveniens* motion, courts take into account a variety of factors including: (1) the plaintiff's original choice of forum, (2) the locus of the operative facts, (3) the convenience and relative means of the parties, (4) the convenience of witnesses, (5) the availability of process to compel the attendance of witnesses, (6) the location of physical evidence, including documents, (7) the relative familiarity of the courts with the applicable law, and (8) the interests of justice, including the interest of trial efficiency. *See id.; Frasca v. Yaw*, 787 F.Supp. 327, 330–33 (E.D.N.Y.1992); 17 *Moore's Federal Practice* § 111.13[1][b] (3d ed.1997). This list is not exhaustive. Some other factors, such as contractual choice of forum clauses or the enforceability of a judgment, are either irrelevant to this case or have not been addressed by the parties.

### A. *Plaintiff's Choice of Forum*

■ A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer. *See In re Warrick*, 70 F.3d 736, 741 (2d Cir.1995); *Eskofot*, 872 F.Supp. at 96; 17 *Moore's Civil Practice* § 111.13[1][c] (3d ed.1997).

In this case, the government suggests that the plaintiff's choice of forum should be discounted because Royal is merely the subrogee of Gregory Artz, the insured, who resides in California. Indeed, reasoning that "[o]ne who rests on subrogation stands in the place of the one whose claim he has paid ...," *United States v. Munsey Trust Co.*, 332 U.S. 234, 242, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), the government contends that Mr. Artz could not have brought his claim here and that, therefore, venue in this district may even be improper.

■ This argument is without merit. If an insurer has paid the entire loss suffered by the insured, it is the real party in interest and must sue in its own name. *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 380–81, 70 S.Ct. 207, 94 L.Ed. 171 (1949); *Brocklesby Transport v. Eastern States Escort Services*, 904 F.2d 131, 133 (2d Cir.1990); 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1546, at 355 (2d ed.1990); 4 *Moore's Federal Practice* § 17.11[3][a] (3d ed.1997). This principle applies with full force even to the determination of subject matter jurisdiction. Thus, it is the citizenship of the subrogee-insurer and not that of the insured which controls in analyzing whether parties are diverse. *See Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460–61, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) (diversity jurisdiction based on citizenship of real party in interest); *Indiana Insurance Co. v. Vlaicevic*, No. 92 C 41, 1992 WL 191125, at *1–*2 (N.D.Ill. Aug. 5, 1992) (diversity determination based on citizenship of subrogee); 6A Charles Alan Wright, et al., *Federal Practice and Procedures*, § 1556 at 424 (2d ed.1990); 4 *Moore's Federal Civil Practice* § 17.13[2][a] (3d ed.1997).

■ Certainly, if subject matter jurisdiction turns on the citizenship of the subrogee as the real party in interest, then issues such as venue should as well. Thus, since Royal has paid its insured's claim and is domiciled in this district, venue is proper here. Furthermore, for purposes of a transfer motion, Royal's choice of forum is entitled to the normal deference.

### B. *Locus of Operative Events*

■ The weight accorded to a plaintiff's choice of venue is significantly diminished, however where the operative facts have no connection to the chosen district. *See 800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 134 (S.D.N.Y.1994); *Morales v. Navieras de Puerto Rico*, 713 F.Supp. 711, 712–13 (S.D.N.Y.1989). That is the case here. The Nighthawk III ran aground in Ventura Harbor, California, where the navigational light at issue allegedly failed. While photos or videotapes of the scene could be introduced at trial in any forum, an inspection of the site of the accident by the trier of fact could only be accomplished if the case were tried in California.

*See Dicken v. United States,* 862 F.Supp. 91, 94 (D.Md.1994) (transfer to district where tort occurred for potential viewing of scene). By contrast, no relevant events occurred in New York. Thus, this factor strongly favors transfer.

### C.  *Convenience of the Parties*

The convenience of the parties is not a significant consideration in this case. This is not a circumstance where individual plaintiffs are suing a corporate defendant that has disproportionate resources. *See Dwyer v. General Motors Corp.,* 853 F.Supp. 690, 693–94 (S.D.N.Y.1994). The government, of course, is capable of litigating throughout the country. While Royal may not have quite the same capacity, it does have corporate offices in the Central District of California as well as in New York.

### D.  *Convenience of Witnesses*

It would be far more convenient to the majority of witnesses to try this case in California. Mr. Artz, the owner of the Nighthawk III, lives in California. The two Harbor Patrol officers who responded to his distress call and who observed the light on the night of the grounding reside there. So does the Coast Guardsman who was responsible for maintaining the light. Even the plaintiff's own marine surveyor is in California. Royal's expert witness lives in Maryland, and so would have to travel to either potential forum. Royal's adjuster, Alice Teal, is the only witness who works in New York.

▮ The convenience of witnesses has been characterized as "the most powerful factor governing the decision to transfer a case." *In re Eastern District Repetitive Stress Injury Litigation,* 850 F.Supp. 188, 194 (E.D.N.Y.1994) (citing *Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 259–60 (S.D.N.Y.1974)). Here, this factor cuts overwhelmingly in favor of transfer.

### E.  *Ability to Compel Witness Testimony*

Related to the convenience of witnesses is the ability to compel the attendance of witnesses who might be reluctant to appear voluntarily. In this regard, the witnesses who are under the control of one of the parties need not be considered. In this case, Royal's claims adjuster, the Coast Guard officer, and any expert witnesses may be expected to testify on behalf of the parties in either forum without compulsion. Further, although Mr. Artz resides in California, he is presumably required by the terms of his insurance policy to cooperate with Royal, and therefore would appear in New York.

On the other hand, the Harbor Patrol officers who were eyewitnesses are not within the control of either party, and they are beyond the subpoena power of this Court. Thus, if they must be compelled to testify, this could be done only in California. While it would be possible to introduce at trial *de bene esse* depositions of these witnesses, perhaps taken by videotape, such a procedure is a poor substitute for live testimony. *See Eastern District Repetitive Stress Injury Litigation,* 850 F.Supp. at 194.

### F.  *Location of Physical Evidence*

Though the location of evidence favors transfer in this case, it is not a significant factor. The relevant documents are located in California, but they are not voluminous and are easily transported. *See McEvily v. Sunbeam–Oster Co.,* 878 F.Supp. 337, 348 (D.R.I.1994) (ease of access to large quantity of documents favors transfer). The vessel, too, remains on the West Coast, but the expert witnesses may view it there and obtain any photographs or videotapes. Because it is uncontested that the Nighthawk III was damaged, it is unlikely that a viewing of the vessel itself by the trier of fact would be necessary. *See S–Fer International, Inc. v. Paladion Partners, Ltd.,* 906 F.Supp. 211, 215 (S.D.N.Y.1995) (demonstrative evidence satisfactory substitute for visit to property at issue).

### G.  *Familiarity with the Governing Law*

Royal cites numerous opinions from courts in this circuit dealing with the adequacy of navigational aids. It also argues that few if any such cases have been decided in the Ninth Circuit. From this, Royal concludes that the familiarity of this Court with the

355

governing law militates against transfer. In response, the government points to some Ninth Circuit cases that seem to undercut the factual premise of Royal's argument by showing that the courts in California are fully conversant with the legal principles at issue.

 Yet even if Royal were correct that the transferee forum lacks a decisional track record, this would not be a justification for transfer. When courts consider a potential venue's relative familiarity with the applicable law, they are referring to the application of state law in diversity cases. *See, e.g., Laumann Manufacturing Corp. v. Castings USA, Inc.,* 913 F.Supp. 712, 721–22 (E.D.N.Y.1996); *Eastern District Repetitive Stress Injury Litigation,* 850 F.Supp. at 196. For example, a federal court sitting in New York is more likely to have developed a familiarity with New York law than is a court in Arkansas, and it would therefore waste resources to educate the Arkansas court in the law of another state. Thus, "[f]ederal courts have generally favored adjudication of a controversy by the court which sits in the state whose law will provide the rules of decision." *Id.* (citation omitted).

The same principle does not apply where, as here, federal law governs. *See Morales,* 713 F.Supp. at 713 (where federal maritime law controls, relative familiarity of courts with governing law not relevant). All federal courts are presumed to be fully capable of applying nationally applicable legal principles. To hold otherwise would invite the balkanization of the federal courts, with one circuit becoming increasingly expert in seaman's injury cases while another specializes in cargo damage actions. This factor, then, does not favor transfer.

### H. *Interest of Justice*

Neither party has suggested how any additional factor would weigh in the interest of justice. For example, no evidence has been presented that the case could proceed to trial more quickly in one forum or the other.

### Conclusion

Notwithstanding Royal's choice of New York as the venue for this action, the relevant factors overwhelmingly favor transfer-

ring it to the Central District of California. Accordingly, the government's motion is granted and the Clerk of Court shall effect the transfer.

SO ORDERED.