**ROYAL & SUNALLIANCE A/S/O Pilot Air Freight and PPG Industries, Plaintiff,**

v.

**BRITISH AIRWAYS, Defendant.**

**No. 00Civ.6466SHSJCF.**

United States District Court, S.D. New York.

April 12, 2001.

Stephen J. Fearson, Condon & Forsyth, L.L.P., New York City, for British Airways.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

This case involves a consignment of glass that was damaged during transit from Atlanta, Georgia to Rome, Italy. Plaintiff Royal & Sunalliance ("Royal"), as insurer and subrogee of Pilot Air Freight ("Pilot") and PPG Industries ("PPG"), seeks to recover $2,961.57 for damage incurred while the cargo was in the control of defendant British Airways of Great Britain and Northern Ireland ("British Airways"). The parties have consented to refer the case to me for all purposes including final disposition pursuant to 28 U.S.C. § 636(c). British Airways now moves pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Northern District of Georgia for the convenience of the parties and witnesses and in the interest of justice. For the reasons that follow, the motion is granted.

### Background

On July 30, 1998, Pilot delivered a two-piece consignment of glass weighing 4,544 kilograms to British Airways' warehouse at the Atlanta Airport in Georgia. (Affidavit of Stephen Fearon dated December 12, 2000 ("Fearon Aff."), ¶ 9). That same day, Pilot contracted with British Airways to transport the cargo from Atlanta to Rome via London. (Fearon Aff. ¶ 7). An agent of British Airways noted on the delivery receipt: "both crates poorly crated, not sturdy, band not tight." (Pilot International Delivery Cartage Receipt dated July 30, 1998, attached as Exh. E to Fearon Aff.). According to the plaintiff, the cargo was subsequently damaged during transit.[1] (Affidavit of David Loh dated December 19, 2000 ("Loh Aff."), ¶ 3). Pilot submitted a claim for damages to its insurer, Royal. (Affidavit of Frank Wiegl dated December 18, 2000 ("Weigl Aff."), ¶ 7). The claim was handled by Royal's New York City office, which made payment to Pilot under its insurance policy. (Weigl Aff. ¶¶ 8, 9).

### Discussion

The statute governing transfer of cases provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28

---

1. Royal insists that the fact that the crates were damaged is not in dispute (Loh Aff. ¶ 3), but the defendant has consistently contested this issue. (Fearon Aff. ¶ 3; Defendant's Memorandum of Law dated December 12, 2000 ("Def.Memo.") at 2).

U.S.C. § 1404(a). Here, there is no dispute that this action could have been brought in the Northern District of Georgia. Accordingly, the determination whether to transfer on grounds of convenience lies "within the broad discretion of the district court." *Palace Exploration Co. v. Petroleum Development Co.,* 41 F.Supp.2d 427, 437 (S.D.N.Y.1998) (quoting *In re Cuyahoga Equipment Corp.,* 980 F.2d 110, 117 (2d Cir.1992)). However, the burden of demonstrating the desirability of transfer rests with the moving party. *See Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989); *Queens Legal Services Corp. v. Legal Services Corp.,* No. 00 Civ. 3423, 2000 WL 1093001, at *3 (S.D.N.Y. Aug. 4, 2000).

■ In evaluating a *forum non conveniens* motion, courts take into account a variety of factors including: (1) the plaintiff's original choice of forum, (2) the locus of the operative facts, (3) the convenience and relative means of the parties, (4) the convenience of the witnesses, (5) the availability of process to compel the attendance of witnesses, (6) the location of physical evidence, including documents, (7) the relative familiarity of the courts with the applicable law, and (8) the interests of justice. *See Riviera Trading Corp. v. Oakley, Inc.,* 944 F.Supp. 1150, 1159 (S.D.N.Y.1996); *Frasca v. Yaw,* 787 F.Supp. 327, 330–33 (E.D.N.Y.1992); 17 *Moore's Federal Practice* § 111.13[1][b] (3d ed.1997). This list is not exhaustive. Some other factors, such as contractual choice of forum clauses or the enforceability of a judgment, are either irrelevant to this case or have not been addresses by the parties.

### 1. *Plaintiff's Choice of Forum*

■ A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer. *See In re Warrick,* 70 F.3d 736, 741 (2d Cir. 1995); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 96 (1995); 17 *Moore's Civil Practice* § 111.13[1][c]. Royal originally brought a suit for damages to personal property in the Civil Court of the City of New York, Small Claims Part. (Fearon Aff. ¶ 4). British Airways then removed the action to federal court, alleging federal question jurisdiction based on the Warsaw Convention.[2] (Notice of Removal dated August 29, 2000, attached as Exh. B to Fearon Aff.). Though Royal did not file its initial complaint in United States District Court for the Southern District of New York, New York, not Georgia, is clearly its forum of choice. Accordingly, there must be other strong factors that compel transfer to another jurisdiction.

### 2. *Locus of Operative Facts*

■ The weight accorded to a plaintiff's choice of venue is significantly diminished, however, where the operative facts have no connection to the chosen district. *See 800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 134 (S.D.N.Y.1994); *Morales v. Navieras de Puerto Rico,* 713 F.Supp. 711, 712–13 (S.D.N.Y.1989). The facts underlying this dispute occurred predominantly in Atlanta. The contract between Pilot and British Airways was executed at the defendant's warehouse in the Atlanta Airport. (Fearon Aff. ¶ 8). It was there that the cargo was tendered and an agent of British Airways took exception to the condition of the consignment. (Fearon

**2.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in* note following 49 U.S.C.A. § 40105 (1997).

Aff. ¶ 9.) At no time did the cargo enter or pass through the State of New York. (Fearon Aff. ¶ 10). The only event that took place in New York was Royal's adjustment of Pilot's insurance claim. (Weigl Aff. ¶¶ 8, 9). Because the issue in dispute here bears little connection to New York, Royal's choice of forum must be afforded less weight.

### 3. Convenience and Relative Means of the Parties

When considering the convenience of the parties, "[t]he logical starting point is a consideration of the residence of the parties." *Frasca*, 787 F.Supp. at 331 (citing *Heyco, Inc. v. Heyman*, 636 F.Supp. 1545, 1550 (S.D.N.Y.1986)). Royal is a multinational insurance company with its United States headquarters located in Charlotte, North Carolina and a principal place of business in New York City. (Loh Aff. ¶ 7). British Airways is a foreign corporation organized under the laws of the United Kingdom, but which does business throughout the United States, including in Georgia. (Fearon Aff. ¶ 6). Thus, both parties are capable of litigating in either district; this is not a case where one party has disproportionate resources. *See Dwyer v. General Motors Corp.*, 853 F.Supp. 690, 693–94 (S.D.N.Y.1994). Accordingly, the convenience of the parties is not an significant consideration in this case.

### 4. Convenience of the Witnesses

When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district. *See Aquatic Amusement Associates v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990). The party seeking transfer "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *How-*

*ard v. Four Seasons Hotels, Ltd.*, No. 96 Civ. 4587, 1997 WL 107633, at *3 (S.D.N.Y. Mar. 10, 1997) (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978)). Finally, the convenience of non-party witnesses is more significant than that of party witnesses. *See Nieves v. American Airlines*, 700 F.Supp. 769, 773 (S.D.N.Y.1988).

Royal argues that it needs the testimony of Frank Weigl and Susan Smith, two claims adjusters at its New York office, to establish damages and to authenticate business records. (Loh Aff. ¶ 5). Royal also asserts that it intends to depose witnesses from PPG and Pilot who are located in Pittsburgh and Lima, Pennsylvania, respectively. (Loh Aff. ¶ 5). Finally, Royal has stated that it does not plan to call any witnesses from Georgia. (Loh Aff. ¶ 6.).

British Airways argues that Mr. Weigl and Ms. Smith "are, at best, peripheral witnesses with no personal knowledge of the handling of the consignment." (Defendant's Reply Memorandum of Law dated January 9, 2001 ("Def. Reply Memo."), at 3). The defendant contends that damages can be established with receipts, while authenticity of business documents can be verified by affidavit. (Def. Reply Memo. at 3). British Airways further alleges that it must conduct depositions of non-party witnesses located in Georgia including Jeff Campbell, the Aerolink International Manager who accepted the freight at the Atlanta warehouse, and various Pilot employees. (Def. Reply Memo. at 3).

British Airways has demonstrated that the witnesses needed in Georgia are more material to this case than are the various claims adjusters located in New York and Pennsylvania. Mr. Campbell is necessary to "give testimony regarding the condition of the consignment when delivered to the [British Airways] Atlanta warehouse and whether [Pilot] had notice

of improper packaging." (Def. Reply Memo. at 3). Such testimony goes to the heart of this case, in contrast to the testimony of the claims adjusters from Royal, Pilot, and PPG who are needed only to establish damages and authenticate business records. There is no evidence that these employees had any direct knowledge of the condition of the cargo when it arrived in Atlanta. Furthermore, the presence of witnesses in Pennsylvania must be afforded even less weight because they too are located outside the plaintiff's chosen venue. *See U.S. Fidelity & Guaranty Co. v. Republic Drug Company*, 800 F.Supp. 1076, 1082 (E.D.N.Y.1992).

The convenience of witnesses has been characterized as "the most powerful factor governing the decision to transfer a case." *In re Eastern District Repetitive Stress Injury Litigation*, 850 F.Supp. 188, 194 (E.D.N.Y.1994) (citing *Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257, 260 (S.D.N.Y.1974)). Here, this factor cuts in favor of transfer.

### 5. *Ability to Compel Witness Testimony*

"Related to the convenience of witnesses is the ability to compel the attendance of witnesses who might be reluctant to appear voluntarily." *Royal Insurance Co. of America v. United States*, 998 F.Supp. 351, 354 (S.D.N.Y.1998). This factor also favors British Airways. The only non-party witness listed by either of the parties is Mr. Campbell, who is a manager at Aerolink International. All the other witnesses are employees or within the control of named litigants. This includes the claims adjusters from Pilot and PPG. *See id.* (presuming that insured party, though not a named plaintiff, would be required by terms of his insurance to cooperate with insurance company).

### 6. *Location of Physical Evidence*

Though the location of physical evidence favors transfer in this case, it is not a significant factor. It seems unlikely that finder of fact will have to visit the Atlanta warehouse to observe the movement of a typical consignment, as suggested by the defendant. Though most of the documents related to this matter are located in Atlanta, they are not voluminous and are easily transported. *Cf. id.* (citing *McEvily v. Sunbeam–Oster Co.*, 878 F.Supp. 337, 348 (D.R.I.1994)) (ease of access to large quantity of documents favors transfer).

### 7. *Familiarity with Governing Law*

When courts consider the relative familiarity of a potential venue with the applicable law, they are concerned with the application of state law in diversity suits. *See, e.g., Laumann Manufacturing Corp. v. Castings USA, Inc.*, 913 F.Supp. 712, 721–22 (E.D.N.Y.1996); *Eastern District Repetitive Stress Injury Litigation*, 850 F.Supp. at 196. This case, however, is in federal court because it arises under an international treaty to which the United States is a party. All federal courts are presumed to be fully capable of ruling on nationally applicable legal principles. *See Royal Insurance*, 998 F.Supp. at 355. Accordingly, this factor does not support transfer.

### 8. *Interest of Justice*

The court must also consider whether a transfer is in the interest of justice, "a concern which relates primarily to issues of judicial economy." *Dostana Enterprises LLC v. Federal Express Corp.*, No. 00 Civ. 0747, 2000 WL 1170134, at *7 (S.D.N.Y. Aug. 16, 2000). British Airways argues that a trial in Georgia would be more expeditious and less expensive than a trial in New York. (Def. Memo. at 7). "Although certainly not decisive,

docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor for the Court to consider and is afforded 'some weight.'" *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 991 (E.D.N.Y.1991) (citations omitted). Indeed, it has been noted that the Southern District of New York is one of the busiest courts in the nation. *See Raines v. Switch Manufacturing Corp.,* No. 96 Civ. 2361, 1996 WL 413720, at *3 (S.D.N.Y. July 24, 1996). Accordingly, retention of a case such as this, with only minimal connections to New York, would not serve the interest of justice, and would only "delay adjudication of other cases brought by parties who are compelled to sue [here]." *Kanbar v. U.S. Healthcare, Inc.,* 715 F.Supp. 602, 606 (S.D.N.Y.1989).

*Conclusion*

Notwithstanding Royal's choice of New York as the venue for this action, the relevant factors favor transferring it to the Northern District of Georgia. Accordingly, British Airways' motion is granted and the Clerk of Court shall effect the transfer.

SO ORDERED.