**MITSUI MARINE AND FIRE INSURANCE CO. LTD.,**
Plaintiff,

v.

**NANKAI TRAVEL INTERNATIONAL CO., INC., NTI (Thailand) Co. Ltd., Nankai Transportation International (USA), Inc., Nankai Transport International (HK) Co., Ltd., Defendants/Third–Party Plaintiffs,**

v.

**United Air Lines, Inc., Japan Airlines Co., Ltd., Hyper Trucking, Inc. Third–Party Defendants.**

No. 01CIV3203RMBRLE.

United States District Court,
S.D. New York.

Jan. 17, 2003.

Charles E. Schmidt, Kennedy, Lillis, Schmidt & English, New York City, for Plaintiff.

Joseph P. Minasi, Bushell, Kleczka & Minasi, Northport, NY, David De Andrade, Felcher & Freifeld LLP, New York City, George W. Wright, George W. Wright & Associates, LLC, New York City, for Defendants.

## OPINION AND ORDER

ELLIS, United States Magistrate Judge.

## I. INTRODUCTION

On May 17, 2001, plaintiff Mitsui Marine and Fire Insurance Co., Ltd. ("Mitsui"), filed a complaint as insurer and subrogee for Sharp Electronics Corporation ("Sharp") against Nankai Travel International Company, Inc., NTI (Thailand) Co., Ltd., Nankai Transportation International (USA), Inc., and Nankai Transportation International (HK), Co., Ltd. (collectively, "Nankai") to recover loss and damages under the Warsaw Convention. On April 5, 2002, Nankai filed a third-party complaint against United Air Lines, Inc., Japan Airlines Co., Ltd. and Hyper Trucking, Inc. ("Hyper"). On June 20, 2002, Nankai filed the instant motion to transfer this action to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) "on the grounds that this litigation has no connection to New York and transfer will be for the convenience of parties and witnesses and in the interest of justice." *See* Nankai Notice of Motion at 2. On the same day, third-party defendants Hyper filed a motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue to the United States District Court for the Northern District of Illinois. For the reasons set forth below, Nankai's motion is **GRANTED**, and Hyper's motion is therefore moot.

## II. BACKGROUND

Between the dates of May 17, 1999 and March 17, 2000, Nankai agreed to carry shipments of Sharp merchandise from Japan, Thailand and Hong Kong to Chicago, Illinois, and Los Angeles, California. *See* Affidavit of Joseph P. Minasi ("Minasi Aff.") at ¶ 3. Unsatisfied with the condition

of the delivered goods, Sharp submitted thirty-six claims for missing and/or damaged goods to Mitsui. *Id.* Of the thirty-six claims, twenty-two shipments terminated in Chicago, Illinois, at O'Hare Airport and fourteen shipments terminated in Los Angeles, California. *Id.* at ¶ 4. None of the claimed shipments had any contact with New York. The shipments arriving in Chicago were unloaded by airline personnel and placed in cargo holding areas until Hyper, an Illinois based company, transported the containers to Sharp. *Id.* at ¶ 5. Sharp employees in Illinois claimed the goods were damaged, and Sharp eventually submitted its claims to Mitsui, which is based in New York. *Id.*

## III.  DISCUSSION

### A.  Standard of Review

■   "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As the Second Circuit has noted, "[t]he determination [of] whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989). Further, "[t]he burden is on the party seeking to transfer to make a clear-cut showing that it is warranted." *TM Claims Service v. KLM Royal Dutch Airlines,* 143 F.Supp.2d 402, 403 (S.D.N.Y. 2001) (citations omitted). While normally the plaintiff's choice of forum should not be disturbed, "[t]he core determination under Section 1404(a) is the center of gravity of the litigation." *Id.* (citation omitted).

■   There is no dispute in this case that Mitsui's claims could have been brought in the Northern District of Illinois. *See* Re-

ply Affidavit of Joseph P. Minasi ("Minasi Reply Aff.") at ¶ 6. Other factors to consider include: "(1) the plaintiff's original choice of forum, (2) the locus of the operative facts, (3) the convenience and relative means of the parties, (4) the convenience of the witnesses, (5) the availability of process to compel the attendance of witnesses, (6) the location of physical evidence, including documents, (7) the relative familiarity of the courts with the applicable law, and (8) the interests of justice." *Royal & Sunalliance v. British Airways,* 167 F.Supp.2d 573, 576 (S.D.N.Y.2001). Analysis of these factors leads this Court to conclude that transfer of this case to the Northern District of Illinois is warranted.

### B.  Relevant Factors

#### 1.  Plaintiff's Choice of Forum

■   "A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal & Sunalliance,* 167 F.Supp.2d at 576. "However, a plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum." *TM Claims,* 143 F.Supp.2d at 404 (citations omitted). Mitsui is a Japanese corporation "with an office and place of business" in New York. *See* Complaint at ¶ 2. Other than that, there appears to be no other nexus to New York as described below. This factor is not controlling.

#### 2.  Locus of Operative Facts

The alleged damage/destruction of goods occurred in Chicago and Los Angeles. *See* Minasi Aff. at ¶¶ 4–5. Further, the survey of the damage occurred in these cities. *Id.* As courts within this district have noted, "[t]he location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *TM Claims,* 143

F.Supp.2d at 404 (*citing Smart v. Goord,* 21 F.Supp.2d 309, 316 (S.D.N.Y.1998) (citations omitted)). The only relevant fact which occurred in New York was the handling of the claim. Given the minimal connection to New York, Mitsui's choice of forum must be afforded less weight. This factor weighs in favor of transfer.

### 3. Convenience and Relative Means of the Parties

When considering the convenience of the parties, the traditional starting point is the residence of the parties. *See TM Claims,* 143 F.Supp.2d at 405; *Royal & Sunalliance,* 167 F.Supp.2d at 577. As previously noted, Mitsui is a Japanese corporation. *See* Complaint at ¶ 2. Nankai is also a Japanese corporation. *Id.* at ¶ 3. Both business have an office and place of business in New York. *Id.* Furthermore, Nankai was doing business in Illinois and has conceded that all of the defendants are amenable to personal jurisdiction there. *See* Minasi Reply Aff. at ¶ 6. Neither party has indicated that a transfer would be unduly burdensome to their finances. Also, Hyper, a third-party defendant is an Illinois corporation with its primary place of business in Illinois. Although Hyper's location is not dispositive of this factor, it is an important consideration in the next factor. This factor weighs in favor of transfer.

### 4. Convenience of the Witnesses

■■■■ As courts within this district have held, "the most significant factor to be decided by the Court [when considering a transfer], in its exercise of discretion, is the convenience of the party and nonparty witnesses." *TM Claims,* 143 F.Supp.2d at 405 (*citing Nieves v. American Airlines,* 700 F.Supp. 769, 771–72 (S.D.N.Y.1988)). The court should "consider the materiality, nature and quality of each witness, not merely the number of witnesses in each

district." *Royal & Sunalliance,* 167 F.Supp.2d at 577. Further, "[t]he party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Id.* (citations omitted).

Defendants contend that a majority of the material witnesses are located in Illinois. These Illinois witnesses include: Diane Jordan, Andrew Carrillo and an individual identified only as Cambell, all of whom apparently signed on behalf of Sharp when the delivery of the cargo was made to Sharp, *see* Minasi Aff. at ¶ 8(c); Mr. Dierdoff, who conducted the survey of damage commissioned by Sharp, *see id.* at ¶ 7(b); Ms. Moscato, the claims analyst for Sharp who made some of the initial claims to Nankai, *see id.* at ¶ 7(a); individuals from Sharp identified as Chavey and Nelson who filled out and executed Warehouse Receiving Reports and O.S. & D. Control Reports allegedly identifying damage to the cargo at issue, *see id.* at ¶ 8(c); as well as various Hyper employees who handled the cargo, *see id.* at ¶ 8(f). Mitsui can only point to three possible witnesses in New York, all of whom will testify to various aspects of the insurance claim handling. Individuals involved in claims handling, however, are not material witnesses in this case. *See TM Claims,* 143 F.Supp.2d at 406 (noting that the information possessed by these witnesses "does not mean that these individuals have any relevant personal knowledge as to the events which allegedly caused damage to the subject cargo."); *Royal & Sunalliance,* 167 F.Supp.2d at 578 (noting that insurance claims adjusters "are needed only to establish damages and authenticate business records."). This factor heavily favors transfer.

### 5. Ability to Compel Witness Testimony

This factor is "generally relevant only with respect to third-party witnesses, since

527

employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." *TM Claims*, 143 F.Supp.2d at 406 (citation omitted). The non-party witnesses in this case appear to be employees of the third-party defendants, with employees in both Illinois and California. This factor favors transfer.

### 6. Location of Physical Evidence

As Mitsui points out, the "[d]ocuments are potentially located at: (1) the points of loading in Tokyo, Osaka, Bangkok, and Hong Kong; (2) points of discharge in Los Angeles and Chicago; (3) Mitsui's office in New York; (4) and Sharp headquarters in Mahwah, New Jersey." Plaintiff's Memorandum of Law In Opposition to Motions to Transfer Pursuant to 28 U.S.C. § 1404(a) Submitted By Nankai and HTI ("Pl.Mem.") at 16. Mitsui further observes, "the only physical evidence is documents and there are not so many to make it burdensome. Transferring the case would just change the location where the documents should be sent." *Id.* This factor favors transfer, although it is not as significant as other factors.

### 7. Familiarity with Governing Law

This case arises under the Warsaw Convention. *See* Complaint at ¶ 1. "All federal courts are presumed to be fully capable of ruling on nationally applicable legal principles." *TM Claims*, 143 F.Supp.2d at 407 (*citing Royal Insurance Company of America v. United States*, 998 F.Supp. 351, 355 (S.D.N.Y.1998)). Therefore, "this factor is 'neutral' in the 1404(a) analysis." *Id.*

### 8. Interest of Justice

"The interests of justice are based on the totality of the circumstances." *Id.* (citation omitted). This factor "relates primarily to issues of judicial economy."

*Royal & Sunalliance*, 167 F.Supp.2d at 578 (citation omitted). The material events occurred in Chicago and Los Angeles, and have virtually no connection to New York. The overwhelming majority of factors favor transfer. *See TM Claims*, 143 F.Supp.2d at 407 (noting that transfer is favored when the majority of factors indicate case should be transferred).

### IV. CONCLUSION

For the foregoing reasons, Nankai's motion to transfer this action to the United States District Court for the Northern District of Illinois is **GRANTED**. The Clerk of the Court is directed to transfer the case to that district. Accordingly, third-party defendant Hyper's motion is moot.