Carol ROMANO, Plaintiff,

v.

BANC OF AMERICA INSURANCES SERVICES, INC. and Monumental Life Insurance Company, Defendants.

No. 07–CV–2543 (JFB)(WDW).

United States District Court,
E.D. New York.

Dec. 17, 2007.

Anthony J. Gallo, Anthony P. Gallo, P.C., Commack, NY, for Plaintiff.

Norman L. Tolle, Rivkin Radler LLP, Uniondale, NY, for Defendants.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

Defendant Monumental Life Insurance Company (hereinafter "Monumental Life") has moved to transfer the venue of this action to the United States District Court for the District of Maryland (hereinafter, "District of Maryland"), pursuant to 28 U.S.C. § 1404(a), arguing that the convenience of party and non-party witnesses and the interests of justice warrant such a transfer. For the reasons stated below, the Court transfers the instant case to the District of Maryland under the authority of 28 U.S.C. § 1404(a).

### I. BACKGROUND

The following facts are undisputed for purposes of the motion.

Monumental Life is a life insurance company incorporated in the State of Maryland and its principal place of business is Baltimore, Maryland. Monumental Life prepared, issued, and delivered the Accidental Death Certificate of Insurance No. G58–3939742 (the "Certificate") under Group Accidental Death Insurance Policy No. MZ2000104/003F (the "Policy") to Michael A. Romano (hereinafter, "Mr. Romano" or the "Decedent") in the District of Maryland. The Certificate provides for accidental death benefits to be paid to the named beneficiary when "(1) death occurs as a direct result of an Injury; and (2)

death occurs within 365 days of the accident causing the Injury." (Affidavit of Roger Flood, dated Sept. 21, 2007 ("Flood Aff."), Ex. A, at 2.) The definition section of the Certificate defines "Injury" as:

> bodily injury caused by an accident. The accident must occur while the Covered Person's insurance in force under the Policy. The Injury must be the direct cause of the Loss and must be independent of all other causes. The Injury must not be caused by or contributed to by Sickness.
>
> (*Id.*)[1] In addition, the exclusions section of the Certificate states, "We will not pay a benefit for a Loss which is caused by, results from, or contributed to by: ... Sickness or its medical or surgical treatment, including diagnosis." (*Id.* at 2–3.)

Plaintiff, who was Mr. Romano's wife and the beneficiary of the death benefit under the Certificate, filed a claim with Monumental Life on or about April 6, 2006. After completing its review, Monumental Life denied plaintiff's claim based on its conclusion that the Decedent's death did not result from accidental bodily injury independent of all other causes and, therefore, was specifically excluded under the Certificate as Mr. Romano's death was caused by, resulted from, or was contributed to, by sickness.

Plaintiff, who resides in Suffolk County, New York, commenced this action on or about May 17, 2007 in the Supreme Court of the State of New York, County of Suffolk. In the complaint, plaintiff alleges that Mr. Romano was pronounced dead on January 9, 2006, at John Hopkins Hospital after he suffered severe injuries as a direct result of an accidental fall in his home and that his death was ruled "accidental" on the relevant death certificate.

(Compl.¶ 8.) Thus, plaintiff contends that Monumental Life wrongfully denied her claim and continues to refuse to make payment to plaintiff pursuant to the terms of the Accidental Death Insurance Certificate. In terms of damages, plaintiff seeks a declaration that Monumental is obligated to pay to plaintiff the sum of $100,000 pursuant to the terms of the Certificate.

On September 21, 2007, Monumental Life moved to transfer this action to the District of Maryland, pursuant to Fed. R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404(a). The motion was fully submitted on October 29, 2007 and oral argument was held on December 14, 2007.

## II. Discussion

### A. Applicable Law

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) is intended "to prevent waste of 'time, energy and money' and 'to protect litigants witnesses and [the] public against unnecessary inconvenience and expense.'" *MasterCard Int'l Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157(WHP), 2004 WL 1368299, at *5 (S.D.N.Y. June 16, 2004) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir.2006); *accord Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir.1992). In determin-

---

1. "Sickness" is defined in the Certificate as "an illness or disease which results in a cov- ered Loss while insurance for the Covered Person is in force under the Policy." *(Id.)*

ing whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice." *Clarendon Nat'l Ins. Co. v. Pascual,* No. 99 Civ. 10840(JGK)(AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000).

The parties do not dispute that this action could have been brought in the District of Maryland; rather, the parties focus on whether transfer would promote the interests of justice and the convenience of the parties. The Second Circuit has summarized some of the factors, among others, that a district court is to consider in the exercise of its discretion:

> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co., Inc.,* 462 F.3d at 106–07 (quoting *Albert Fadem Trust v. Duke Energy Corp.,* 214 F.Supp.2d 341, 343 (S.D.N.Y.2002)). Some courts have identified additional factors, including (1) "the forum's familiarity with governing law," and (2) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Glass v. S & M NuTec,* 456 F.Supp.2d 498, 501 (S.D.N.Y.2006); *accord In re Hanger Orthopedic Group, Inc. Sec. Litig.,* 418 F.Supp.2d 164, 167–68 (E.D.N.Y.2006); *see also Dealtime.com v. McNulty,* 123 F.Supp.2d 750, 755 (S.D.N.Y.2000) (collecting cases).

 There is no strict formula for the application of these factors and no single factor is determinative. *See, e.g., Hilti Aktiengesellschaft v. Milwaukee Elec. Tool*

*Corp.,* No. 04–CV–629 (ARR)(ASC), 2004 WL 1812821, at *4 (E.D.N.Y. July 19, 2004); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,* 419 F.Supp.2d 395, 402 (S.D.N.Y.2005). Instead, these factors should be applied and weighed in the context of the individualized circumstances of the particular case. The moving party, Monumental Life, bears the burden of making a showing that transfer is warranted in light of these factors. *See O'Hopp v. ContiFinancial Corp.,* 88 F.Supp.2d 31, 34 (E.D.N.Y.2000) (citing *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir. 1978)).

### E. Analysis

#### (1) Plaintiff's Choice of Forum

 It is well settled that the plaintiff's choice of forum is "given great weight." *D.H. Blair & Co., Inc.,* 462 F.3d at 107 (citation omitted). Thus, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States,* 998 F.Supp. 351, 353 (S.D.N.Y.1998) (citations omitted). However, courts have noted that the weight given to this factor is significantly diminished where none of the operative facts occurred in the forum chosen by plaintiff. *See, e.g., Wagner v. N.Y. Marriott Marquis,* 502 F.Supp.2d 312, 317 (N.D.N.Y. 2007) ("The presumption favoring plaintiff's choice of forum, however, is not so rigidly applied where, as here, the cause of action arose outside the forum . . . .") (quotation marks and citation omitted); *Royal Ins. Co. of Am.,* 998 F.Supp. at 353 ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however where the operative facts have no connection to the chosen district."); *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 990 (E.D.N.Y.1991) ("[W]here the transactions

or facts giving rise to the action have no material relation or significant connection to plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance.").

As discussed in detail below, although plaintiff has chosen this district as her forum, an analysis of the other factors demonstrates that the balance is overwhelmingly in favor of transfer in this case because, among other things, virtually all of the witnesses live or work in Maryland and the locus of operative facts was entirely in Maryland.

### (2) Convenience of Witnesses

In deciding whether to disturb the plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis. *See, e.g., DLJ Mortgage Capital, Inc. v. Cameron Fin. Group, Inc.,* No. 07 Civ. 3746(LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec.4, 2007) ("[T]he convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a)."); *accord Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F.Supp.2d 325, 329 (E.D.N.Y.2006); *Wagner,* 502 F.Supp.2d at 315; *see also Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.,* 774 F.Supp. 858, 868 (S.D.N.Y.1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.... Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district.") (citations omitted). Generally, as Monumental Life has done in the instant case, the moving party submits "an affidavit containing 'detailed factual statements' explaining why the transferee forum is more convenient, including 'the potential principal witnesses expected to be called and a general statement of the substance

of their testimony.'" *Pall Corp. v. PTI Techs., Inc.,* 992 F.Supp. 196, 198 (E.D.N.Y.1998) (quoting *Laumann Mfg. Corp. v. Castings USA Inc.,* 913 F.Supp. 712, 720 (E.D.N.Y.1996)).

Here, Monumental Life has submitted a list of 40 physicians and/or medical providers, identified in Monumental Life's claim file, who have knowledge concerning the Decedent's medical condition prior to his death. (Flood Affidavit, Ex. B.) All but two of these 40 individuals live or work in Maryland. (Flood Aff. ¶ 8.) Plaintiff argues that defendant's reliance on these witnesses is "grossly exaggerated" because "[i]n reality, this case deals with nothing more than the interpretation of contractual provisions contained in the applicable policy of insurance and a medical expert[']s interpretation of a death certificate." (Pl.'s Opp., at 3.) However, the Court disagrees. It is clear from a review of the pleadings in this case that Monumental Life denied plaintiff's claim for the death benefit based on its conclusion that the Decedent's death did not result from accidental bodily injury independently of all other causes as required under the Certificate, and that his death was caused by, resulted from, or contributed to by Sickness. Thus, the focus of this case will not be a legal interpretation of the language of the policy, but rather likely will be a factual determination regarding the Decedent's medical condition prior to death, as well as the cause of death and/or the circumstances contributing to his death. Specifically, Monumental Life has submitted an affidavit from its Director of Claims explaining the relevance of the testimony of these numerous Maryland doctors:

> Monumental Life anticipates that several physicians who treated Mr. Romano and who live or work in the District of Maryland, will provide proof or testimony at the trial of this action regarding

Mr. Romano's medical condition prior to his death, which is highly relevant to determine whether the Decedent's death resulted from "an accidental bodily injury independent of all other causes" or whether the loss is excluded from coverage since it was caused or contributed to by "sickness or its medical or surgical treatment." A review of the medical records in the file reveals that, in addition to the Johns Hopkins Hospital and the Johns Hopkins Oncology Center, the Decedent was treated by more than 30 physicians.... These physicians and medical facilities are all located in or around Baltimore, Maryland.

(Flood Aff. ¶ 7.)

In contrast, the Court is not aware of any potential party or non-party witness, other than plaintiff and one medical provider, who resides in New York. Moreover, plaintiff has failed to explain exactly how her testimony will be relevant to the claims in this action. However, even assuming plaintiff's testimony is relevant, the "convenience of the witnesses" factor strongly favors transfer of this case to the District of Maryland where virtually all of the potential non-party witnesses reside.

### (3) Location of Documents

With respect to the location of documents, virtually all of Decedent's medical records—which are likely to be voluminous given the number of doctors who treated him—are located in Maryland. Although this factor favors transfer, the Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production. *See, e.g., Am. S.S. Owners Mut.*

*Prot. and Indem. Ass'n, Inc. v. Lafarge North Am., Inc.*, 474 F.Supp.2d 474, 484 (S.D.N.Y.2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *Distefano v. Carozzi North Am., Inc.*, No. 98 CV 7137(SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov.16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, ... modern photocopying technology deprives this issue of practical or legal weight.").

### (4) Convenience of the Parties

In terms of the convenience of the parties, the Court considers this factor neutral because this district is more convenient to plaintiff and the District of Maryland is more convenient to Monumental Life.[2] Therefore, if this were the only factor in the case, transfer would not be appropriate given plaintiff's choice of forum. *See Wagner*, 502 F.Supp.2d at 316 (" '[W]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave plaintiff's choice of venue undisturbed.") (quoting *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F.Supp. 174, 182 (W.D.N.Y.1997)); *accord Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F.Supp. 1314, 1322 (S.D.N.Y.1989). However, for the reasons set forth herein, any inconvenience or hardship to plaintiff resulting from a transfer is greatly outweighed by the factors supporting transfer. Thus, this case is not one of simply "shifting inconvenience" to the plaintiff, but rather one where transfer is strongly supported by, among other things, the locus of operative events and the location of

---

**2.** Although plaintiff argues that transfer would result in an undue hardship on her, the Court, for the reasons discussed *infra*, finds that plaintiff has not articulated precisely why substantial hardship would result from this inconvenience given that her counsel can apply to be admitted *pro hac vice* and it is unlikely plaintiff would need to appear in court in the District of Maryland except to attend the trial and/or provide trial testimony.

non-party medical witnesses. *See, e.g., Giuliani, S.p.A. v. Vickers, Inc.*, 997 F.Supp. 501, 503 (S.D.N.Y.1998) ("[W]hile New York is the place of residence of one plaintiff, it cannot be seriously argued that any events giving rise to the action occurred here.... That minimal connection to New York does not outweigh the numerous and substantial connections that this action has to Nebraska, and the significant factors that favor transfer to that forum.").

(5) Locus of Operative Facts

It is conceded by plaintiff that all of the relevant events to this action occurred in the District of Maryland, including the following: (1) Monumental Life issued and delivered the Certificate to the Decedent in Maryland; (2) Decedent died on January 19, 2006 at Johns Hopkins Hospital in Maryland following a fall at his Maryland residence while plaintiff was a Maryland resident; (3) prior to his death, the Decedent was a Maryland resident who received medical treatment in Maryland, including at Johns Hopkins on several occasions in 2005; and (4) plaintiff's claim for death benefits under the Certificate was reviewed by Monumental Life in Maryland. There are absolutely no connections of New York to this action other than that plaintiff and one potential medical witness reside here. Therefore, the locus of operative facts strongly favors the District of Maryland.

(6) Availability of Process to Compel the Attendance of Unwilling Witnesses

Rules 45(b)(2) and 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than 100 miles. Fed.R.Civ.P. 45. As noted *supra*, 38 of the 40 physicians and/or medical providers, who were identified in Monumental Life's claim file with potential knowledge of the Decedent's medical condition, live or work in Maryland. Thus, none of these 38 potential witnesses could be required to appear in New York for either deposition or trial. In contrast, these witnesses could be compelled to testify at trial if the case were transferred to the District of Maryland. Although plaintiff's counsel has stated his willingness to travel to Maryland to depose these witnesses, as the Supreme Court noted in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), "[c]ertainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *See also Royal Ins. Co. of Am.*, 998 F.Supp. at 354 ("While it would be possible to introduce at trial *de bene esse* depositions of these witnesses, perhaps taken by videotape, such a procedure is a poor substitute for live testimony."). Thus, this factor strongly favors transfer.

(7) Relative Means of the Parties

■ "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 135 (S.D.N.Y.1994); *see also Dwyer v. General Motors Corp.*, 853 F.Supp. 690, 693–94 (S.D.N.Y.1994) (denying transfer where "[p]laintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets"). Plaintiff's counsel argues that a transfer would be a significant hardship to plaintiff because "it is practically impossible for plaintiff to be away from her home for any extended period of time." (Pl.'s Opp., at 5.) Moreover, plaintiff further contends that her "current financial status makes it prohibitive for her to re-

tain the services of an out-of-state attorney and prosecute the matter long distance in the District of Maryland." [3] *(Id.)* However, when the Court inquired about these issues at oral argument, plaintiff's counsel acknowledged that there was no barrier to him seeking admission *pro hac vice* in the District of Maryland. Moreover, it is unlikely that plaintiff would need to travel to Maryland if the case were transferred except to attend and/or testify at trial. Thus, although the relative means of plaintiff in contrast to an insurance company clearly favors plaintiff, the Court does not view this factor as having significant weight in this particular case because plaintiff has been unable to demonstrate a substantial hardship (financial or otherwise) caused by the transfer.[4]

In sum, although the Court recognizes that the plaintiff's choice of forum should not be disturbed unless the other factors weigh strongly in favor of transfer, the Court finds that defendant has met its burden in this case. Despite the fact that plaintiff is an individual suing an insurance company in her home district, the other factors—particularly the fact that the locus of operative facts occurred entirely in Maryland and that virtually all of the non-party medical witnesses reside in Maryland and are beyond the subpoena power of this Court—overwhelmingly support

transfer and the Court concludes that the transfer of the case is in the best interest of the litigation. This forum has no connection to the lawsuit (other than that plaintiff has now moved here) and obtaining the documents and/or testimony of the non-party medical witnesses in Maryland will likely be the critical component in determining the merits of plaintiff's claims. Thus, given all of the factors as applied to this case, transfer is appropriate. *See, e.g., Scott v. Life Investors Ins. Co. of Am.,* No. 2:07 CV 29, 2007 WL 3390012, at \*3, \*6 (N.D.W.Va. Nov. 13, 2007) (holding in case where plaintiff sought damages resulting from the defendants' failure to pay the accidental death benefit claims she filed following death of her husband, transfer to South Carolina was warranted because, with the exception of Plaintiff's relocation to the State of West Virginia following the death of the decedent, "the cause of action bears virtually no relation to the forum chosen by the Plaintiff"); *Werner v. Stonebridge Life Ins. Co.,* No. 2:06–CV–174, 2007 WL 602104, at \*5 (D.Vt. Feb.22, 2007) (holding in case where *pro se* plaintiff claimed that defendant improperly denied coverage on a group accidental death insurance policy, transfer to Rhode Island warranted because "the operative events in this case occurred in Rhode Island" and "[s]everal of the witnesses involved in those events,

---

**3.** As a threshold matter, Monumental Life argues that plaintiff has failed to provide any documentation regarding her family circumstances or financial status to support these arguments. However, the Court finds it unnecessary to address this objection because, as discussed *infra,* even assuming plaintiff's arguments regarding relative means could be fully supported with documentation, the Court finds that transfer is still warranted.

**4.** In terms of other factors, with respect to the forum's familiarity with governing law, the Court views this factor as neutral in this case

because the Court assumes that both district courts are equally familiar with, and capable of applying, the legal principles necessary to adjudicate plaintiff's case. *See Wagner,* 502 F.Supp.2d at 317. Similarly, although defendant argues that the relative docket conditions of the two districts favors transfer because this District had over twice as many case filings as Maryland in 2006, the Court does not view relative docket congestion as a factor in this case because this Court is fully capable of adjudicating plaintiff's claims in a timely manner.

including the Werners and relevant medical personnel, are also in Rhode Island"); *Black v. JCPenny Life Ins. Co.*, No. C 01–4070 SI, 2002 WL 523568, at *3 (N.D.Cal. Apr.1, 2002) (holding in case where plaintiff sought to recover benefits from an Accidental Death and Dismemberment Insurance policy issued to her mother, transfer to Southern District of California warranted because, among other things, "the transactions giving rise to [plaintiff's] action have no connection to the Northern District" and "the life insurance policy was purchased by the insured in the Southern District, she received all medical care there, and her death occurred there").

Accordingly, after carefully considering the parties' submissions and the applicable law, the Court concludes in its discretion that the above-referenced factors, as well as the totality of the circumstances and the interest of justice, warrant transfer of this action to the District of Maryland.

## III. CONCLUSION

For the reasons set forth above, Monumental Life's motion to transfer is GRANTED. The Clerk of this Court shall TRANSFER this case to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.