BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA and Belgian General Insurance Company, Plaintiffs,

v.

KOA FIRE & MARINE INSURANCE CO., LTD., Defendant.

KOA FIRE & MARINE INSURANCE CO., LTD., Third-Party Plaintiff,

v.

AMERICAN AGENCY UNDERWRITERS, INC., et al., Third-Party Defendants.

No. 81 Civ. 6717 (RLC).

United States District Court, S.D. New York.

July 22, 1983.

See also 572 F.Supp. 969.

Kroll, Pomerantz & Cameron, New York City, for defendant and third-party plaintiff; Roy E. Pomerantz, Raymond L. Mylott, Jr., Alan J. Brill, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for third-party defendant LeBlanc; James J. Higgins, Jane Elizabeth Lawson, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Pierre LeBlanc (International) and Co., Ltd. ("LeBlanc"), an insurance brokering firm which is a third-party defendant in this action, now moves, pursuant to Rule 12(b)(2), F.R.Civ.P., to dismiss for lack of *in personam* jurisdiction.

On October 30, 1981, the Birmingham Fire Insurance Company of Pennsylvania ("Birmingham") and the Belgian General Insurance Company ("Belgian") sued the

KOA Fire & Marine Insurance Co., Ltd. ("KOA"), for allegedly refusing to indemnify them pursuant to certain reinsurance agreements to which KOA had been committed by American Agency Underwriters, Inc. ("AAU"). Birmingham and Belgian had obtained reinsurance for certain risks through a pooling arrangement established by AAU, and AAU had used KOA as a front reinsurer. AAU had issued certificates of facultative reinsurance to Birmingham and Belgian, naming KOA as liable for 100 percent of each risk. AAU also purportedly arranged for a pool of retrocessionaires—entities that reinsure reinsurers—to indemnify KOA. KOA asserts, however, that it never agreed to be liable for 100 percent of each risk, maintaining instead that its exposure was limited to only two percent in 1977 and one percent in 1978 and 1979. When Birmingham and Belgian presented claims to KOA seeking 100 percent reimbursement, KOA refused to pay, and this lawsuit followed.

On February 8, 1982, KOA commenced a third-party action against AAU, LeBlanc and 59 other reinsurance companies and reinsurance intermediaries. LeBlanc was one of five foreign reinsurance brokers or intermediaries that helped to establish the AAU pool. LeBlanc, a French corporation with its principal place of business in Paris, contacted KOA, a Japanese corporation with a branch office in New York, and other reinsurers with regard to their participating in the pool. In its complaint, KOA alleges that LeBlanc and the four other reinsurance intermediaries breached fiduciary duties to KOA by failing to "collect and/or receive and remit to the account of KOA said recoverables from the participating retrocessionaires and reinsurers." Third-Party Complaint ¶ 85.

## DETERMINATION

■ "The amenability of [a] defendant corporation to suit in a federal diversity action is governed by the law of the state in which the federal court sits, unless it should be found not to comply with constitutional requirements." *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 119 (2d Cir.), *cert.* *denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1967). The plaintiff of course bears the burden of proving that the court has jurisdiction over the defendant. *Wisehart, Friou & Koch v. Hoover*, 473 F.Supp. 945, 948 (S.D.N.Y.1978) (Tenney, J.); *China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 454 F.Supp. 198, 199 (S.D.N.Y.1978) (Broderick, J.).

"[I]f a plaintiff's proof [of jurisdictional facts] is limited to written materials, it is necessary only for these materials *to demonstrate facts* which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977) (emphasis added). Because both sides have submitted papers that go beyond the pleadings, LeBlanc's motion will be treated as one for summary judgment, pursuant to Rule 56, F.R.Civ.P.

■ NYCPLR section 301, which reaffirms the jurisdictional basis over corporations "doing business" in New York, states that "[a] court may exercise such jurisdiction over persons ... as might have been exercised heretofore[,]" or in other words as might be constitutionally exercised. Thus, the court must examine the facts of each case using the "minimum contacts" and "traditional notions of fair play and substantial justice" standards set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ Alain Edmond Rimbert, a LeBlanc officer, asserts that his company "is not qualified to do business in New York, does not maintain an office or bank account in New York, does not advertise in New York, and has no agent for service or any other purpose in New York." Rimbert Aff. ¶ 5. He adds that "LeBlanc has intentionally elected to participate in the international reinsurance market outside the United States and it is for this reason that ... LeBlanc is often requested to act as an intermediary to place reinsurance outside the United States with foreign insurers." Rimbert Supplemental Aff. ¶ 4. Thus, LeBlanc maintains that its contacts with New York are so minimal that it cannot be said

to be "doing business" in the state. Memorandum of Law in Support of Motion to Dismiss the Third-Party Action ("Memorandum in Support") at 9–12.

Although KOA addresses the point only obliquely, it does appear to maintain that LeBlanc is "doing business" in New York. Memorandum of Law in Opposition to Motion to Dismiss the Third-Party Action ("Memorandum in Opposition") at 11. In its memorandum, KOA argues that LeBlanc "regularly does or solicits business in the international reinsurance market, of which the New York market is one of the largest [segments]." *Id.* In addition, KOA maintains that LeBlanc "obtain[s] substantial revenue from the placement of the reinsurance of New York risks." *Id.*

KOA has utterly failed, however, to provide any evidentiary support to buttress these assertions. All it has submitted is the affidavit of its attorney, Roy E. Pomerantz, whose statement clearly "was not made on personal knowledge of the underlying evidentiary facts." *Unicon Management Corp. v. Koppers Co.,* 250 F.Supp. 850, 852 (S.D.N.Y.1966) (Herlands, J.). Neither in the Pomerantz affidavit nor anywhere else has KOA furnished hard evidence regarding whether LeBlanc solicits business in the New York reinsurance market, exactly what New York risks, if any, LeBlanc has arranged reinsurance for, exactly how much revenue, if any, LeBlanc has obtained from the placement, if any, of the reinsurance of New York risks, or how many and whose premiums, if any, LeBlanc has collected from parties in New York. What is more, KOA has failed to submit any evidence challenging LeBlanc's assertion that it does not do business in New York. "The court must assume that the plaintiff has brought forth all the evidence it desires to or is able to proffer on the [doing business] issue." *Id.* at 853.

The record before the court makes clear that KOA has neither presented any facts nor made a prima facie case showing that LeBlanc has "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding. of its 'presence' in this jurisdiction." *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (1967), *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1968). KOA's logic is flawed when it contends that because LeBlanc does business in the international reinsurance market and because New York is one of the largest segments of that market, the court must find that LeBlanc does business in New York. Inasmuch as KOA has failed to furnish any hard evidence on the issue, the court refuses to take the inferential leap of faith that KOA asks it to take. For these reasons, the court concludes that LeBlanc's infrequent, incidental and attenuated contacts with New York are insufficient to warrant jurisdiction, for section 301 "requires that the defendant be doing business in New York not merely 'occasionally, but with a fair measure of permanence and continuity.' " *Bush v. Stern Brothers & Co.,* 524 F.Supp. 12, 13 (S.D.N.Y.1981) (Motley, J.), *quoting Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267 115 N.E. 915, 917 (1917).

KOA also argues that the court has jurisdiction over LeBlanc under two different portions of New York's long arm statute, NYCPLR section 302. First, KOA contends that LeBlanc can be reached by section 302(a)(1)[1] on the ground that it supplies services in New York. Memorandum in Opposition at 5–10.

KOA asserts that LeBlanc, in acting as a reinsurance intermediary with regard to the AAU pool, "supplies services" to insurers in New York. In its memorandum, KOA states:

---

1. Section 302(a)(1) states in pertinent part:

(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . .

LeBlanc knew that it was a link in a chain of participants in a scheme to effectuate the reinsurance of New York risks. That chain extended from ... Birmingham (which is licensed to do business in New York) and Belgian (which has a U.S. branch office in New York) to North American Managers, Inc. (a New York corporation acting as agent of Birmingham and Belgian) to AAU (a Pennsylvania corporation doing business in New York) to Pierre LeBlanc to KOA (a Japanese corporation with liaison and U.S. branch offices in New York). New York premiums passed up that chain and New York claim payments passed down that chain. ... [B]y its participation in that chain, Pierre LeBlanc clearly engaged in supplying services in New York continuously since 1976.

Memorandum in Opposition at 9–10. In his affidavit, Pomerantz, KOA's lawyer, clearly speaking more out of speculation than out of personal knowledge, expanded upon this theory:

[I]t is quite clear that the existence of a reinsurance facility such as that arranged by Pierre LeBlanc enables primary insurance carriers in the United States (and in New York in particular) to conduct business. It is undisputed that at all times, it was the intention of all the parties, including Pierre LeBlanc that the reinsurance subject to the AAU Pools would be underwritten and placed in the United States market. It should be noted that New York provides one of, if not the largest, reinsurance market in the world. Hence, the case at bar is clearly one involving a foreign corporation as a supplier of services to companies in New York.

Pomerantz Aff. at 9.

In sum, KOA's argument is that in helping arrange reinsurance for the AAU pool, some of the risks of which were evidently New York risks, LeBlanc supplied services in New York—even though LeBlanc worked out of its Paris office the whole time, even though AAU's contacts with LeBlanc were apparently between Pennsylvania and Paris, and even though the companies that LeBlanc contacted and persuaded to participate in the AAU pool were foreign companies.

LeBlanc responds that "in no way did [it] supply services in the State of New York." Rimbert Supplemental Aff. ¶ 6. It says its "sole relation" to the AAU pool "was that it was contacted outside the United States ... to place a small portion of the reinsurance with foreign, non-U.S. reinsurers." Id. ¶ 5. LeBlanc states that it "did not place one item of reinsurance with an American insurer or company in the United States or State of New York." Id.

In his affidavit, Rimbert, the LeBlanc officer, says that "LeBlanc performed services only on behalf of foreign reinsurers in connection with a pool which had been established by AAU." Id. ¶ 8. He notes that as a broker LeBlanc did not reinsure any of the pool's risks, id., "nor did [it] receive any compensation from any company present or doing business in New York in connection with the pool." Id. ¶ 6. Rimbert concludes that LeBlanc "had no knowledge of the underlying risks or policies reinsured by the pool" and that "[a]ll of its activities were as a middle man abroad acting for other foreign corporations, wholly outside the State of New York." Id. ¶ 8.

As was the case on the "doing business" issue, on the "supplying services" issue, KOA has failed to furnish any evidence to support its own allegations or to controvert LeBlanc's. It has not presented any evidence showing what New York risks, if any, were involved here, what contacts, if any, were made between companies in New York and LeBlanc's office abroad, or what premiums, if any, LeBlanc received from companies in New York in relation to the pool. KOA had from March, 1982 until December, 1982 to engage in discovery on these questions, and even though it had all that time for discovery, it has still failed to bring forth any *facts* to make even a prima facie showing that LeBlanc has supplied services in New York. *United States v. Montreal Trust Co.,* 358 F.2d 239, 242 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966) (at this stage

only prima facie showing is needed to establish long-arm jurisdiction). For this reason alone, KOA's "supplying services" argument must be rejected.

Even if it were assumed, however, that some of the risks in the AAU pool for which LeBlanc sought to find reinsurers were New York risks, on these facts KOA's supplying services argument would still not be persuasive. AAU, a Pennsylvania corporation that KOA asserts does business in New York, apparently called LeBlanc in Paris from AAU's offices in Pennsylvania to ask LeBlanc to help find foreign reinsurers for the AAU pool. LeBlanc then contacted KOA, a Japanese corporation that does business in New York, but these contacts apparently were not with KOA's office in New York, nor is it alleged that they were. LeBlanc also contacted many other foreign reinsurers regarding the possibility of their participating in the pool. AAU, and, in a sense, KOA used LeBlanc as a foreign agent to find foreign retrocessionaires. Unless some evidence is furnished to show that the foreign agent has had some contact with New York in relation to its agency or that the services that the agent provides the principal are more than tangentially related to the principal's doing business in New York—neither of which KOA has shown—then the fact that AAU and KOA, both foreign corporations, may do business in New York, without more, is not reason to conclude that the foreign agent, i.e., LeBlanc, that AAU contacted to find foreign reinsurers transacted business or supplied services in New York.

■ KOA is arguing in effect that just because an agent provides services to a principal in and of itself means that any state in which the principal does business should be able to assert jurisdiction over that principal's agent—even when the principal and agent contracted in another state, even when the principal's business in the proposed forum state is unrelated or only tangentially related to the agent, and even when the agent has had no contact with the forum state. Such an expansive, almost boundless, notion of jurisdiction must be rejected because the agent in such a case will have in no way "purposely availed itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

■ It is of course true that a reinsurance broker who arranges for foreign retrocessionaires to participate in a pool involving New York risks provides some incidental benefits to insured parties in New York. In an extremely attenuated sense, LeBlanc, in its role as broker, ends up supplying some services to these insured parties, but this purported supplying of services, which is three, four, or five steps or transactions removed from the initial insured parties in New York, "is far too attenuated a contact to justify [the] exercise of *in personam* jurisdiction." *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980). LeBlanc's role is more properly seen as supplying services in Pennsylvania to AAU and in foreign countries to the foreign reinsurers that it has contacted and persuaded to participate in the AAU pool.

What a reinsurer does is analogous to what an indemnitor does, and in cases both before and after the "supplying services" language was added to section 302(a), it has been found that jurisdiction did not exist over a foreign corporation that did not do business in New York, but had signed an indemnity agreement regarding a New York transaction. In *Media Corp. of America v. Motif Manufacturing Co.,* 524 F.Supp. 86, 87 (S.D.N.Y.1981) (Weinfeld, J.), this court, rejecting the argument that signing an indemnification agreement outside of New York provides a service in New York just because the underlying obligation was in New York, wrote: "The rule in New York is clear that an indemnity agreement alone does not provide a sufficient contact with New York simply because the underlying events that trigger the indemnification occur in New York." In *Ferrante Equipment Co. v. Lasker-Goldman Corp.,* 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970), a case cited by Judge Weinfeld,

the New York State Court of Appeals reached the same conclusion. *But cf. Argonaut Insurance Co. v. Halvanon Insurance Co.,* 80 Civ.1947, slip op. at 5 (S.D.N.Y. June 1, 1982) (Werker, J.) (because retrocessionaires dealt with New York agent and because they in effect were direct reinsurers inasmuch as reinsurance intermediary was merely a shell, foreign retrocessionaires supplied services under section 302). If the relationship of the foreign indemnitor or retrocessionaire that reinsures New York risks is too attenuated to find that it is supplying services in New York, it is all the more true that the foreign middleman who persuades the foreign retrocessionaire to reinsure certain risks does not supply services in New York inasmuch as the middleman's relationship to the state is even more attenuated than that of the foreign indemnitor or retrocessionaire.

KOA relies on *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), but that case is not only distinguishable, its language helps LeBlanc. There, the New York Court of Appeals stated that "it was the purpose of CPLR 302 to extend the jurisdiction of our State courts to nonresidents who have 'engaged in some purposeful activity [here] ... in connection with the matter in suit' ...." 26 N.Y.2d at 17, 308 N.Y.S.2d at 339, 256 N.E.2d at 508 (citation omitted) (bracketed material and ellipsis in original). In *Parke-Bernet,* the defendant purposefully placed a call from California to the plaintiff in New York in order to participate in an auction. In the instant case, KOA has failed to show that LeBlanc "engaged in some purposeful activity" in New York "in connection with the matter in suit." *Id.; see also Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1239.

KOA also argues that this court has jurisdiction over LeBlanc pursuant to NYCPLR section 302(a)(3).[2] In support of this argument, KOA states that "LeBlanc regularly does or solicits business in the international reinsurance market, of which the New York market is one of the largest if not the largest segment." Memorandum in Opposition at 11. KOA adds that "LeBlanc obtains substantial revenue from business related to New York risks and, in fact, obtained substantial revenue from the placement of the reinsurance of New York risks (insured by New York insurers) into KOA." *Id.;* Pomerantz Aff. at 12.

▌ KOA's argument that the court has jurisdiction over LeBlanc under Section 302(a)(3)(i) can easily be dismissed. As discussed earlier, *supra* at 964–965, KOA has made no showing that LeBlanc does or solicits business in the state. Similarly, KOA's contention that LeBlanc obtains substantial revenues from services rendered must be rejected because KOA has not demonstrated that LeBlanc supplies services in the state, *supra* at 966–968, and because except for vague speculations by its lawyer, KOA has provided no evidence that LeBlanc garners substantial revenues from New York risks or any other New York related-business. What is more, even if LeBlanc obtained some incidental revenues from helping find foreign reinsurers of United States risks, some of which turn out to be New York risks, it must be remembered that "financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 299, 100 S.Ct. at 568.

▌ KOA's Section 302(a)(3)(ii) argument can also be dispensed with quickly. Le-

---

2. Section 302(a)(3) states that a court may exercise personal jurisdiction over any non-domiciliary who

(3) Commits a tortious act without the state causing injury to person or property within the state, ... if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ....

Blanc's acts in the events relevant to this lawsuit so indirectly and incidentally affected parties in New York that the court cannot say that LeBlanc "should reasonably expect [its acts] to have consequences in the state."

For the foregoing reasons, LeBlanc's relationship with New York does not fall within the ambit of NYCPLR sections 301 or 302. Thus, LeBlanc's motion to be dismissed for lack of personal jurisdiction is granted.[3]

IT IS SO ORDERED.

---

**3.** The disposition of LeBlanc's motion, pursuant to Rule 12(b)(2), F.R.Civ.P., for lack of *in personam* jurisdiction makes it unnecessary for the court to consider LeBlanc's motion, pursuant to Rule 12(b)(4), which seeks an order quashing service of the Third-Party Summons and Complaint.