## John R. SARRACCO, Plaintiff,

v.

**OCWEN LOAN SERVICING, LLC, Caliber Home Loans, Inc., Phelan Hallinan Diamond & Jones PC, OneWest Bank FSB, and LSF9 Master Participation Trust, Defendants.**

No 16–CV–221 (JFB) (GRB)

United States District Court,
E.D. New York.

Signed December 7, 2016

The attorney for the plaintiff is Steven B. Rabitz, Law Office of Steven Rabitz, PC, 94 Division Avenue, Massapequa, NY 11758.

The attorney for defendants Ocwen and OneWest is Constantine Philip Economides, Greenberg Traurig, LLP, 777 South Flagler Drive, Suite 300 East, West Palm Beach, FL 33401. The attorney for defendant Caliber Home Loans, Inc., is Kenneth S. Goodkind, Flaster Greenberg PC, 1810 Chapel Avenue West, Cherry Hill, NJ 08002. The attorney for defendant LSF9 is Christina Ann Parlapiano, Day Pitney LLP, 1 Jefferson Road, Parsippany, NJ 07054.

## MEMORANDUM AND ORDER

Joseph F. Bianco, District Judge:

### BACKGROUND

On January 10, 2006, John Sarracco ("plaintiff"), a New Jersey resident, obtained a loan in the amount of $385,000 from IndyMac Bank, F.S.B., which was secured by a mortgage on property located in Wantage, New Jersey ("the mortgage"). (Def. LSF9's Mem. Supp. Mot. Trans. Venue, ECF No. 26–1 at 2.) The mortgage was subsequently assigned to OneWest Bank, F.S.B. ("OneWest"), a California entity. (*Id.*; Def. Phelan's Mem. Supp. Mot. Dismiss, ECF No. 23–1 at 1.)

In May 2009, OneWest filed a foreclosure complaint against plaintiff in the Superior Court of New Jersey as a result of plaintiff's failure to pay the mortgage. (LSF9's Mem. Supp. Mot. Trans. Venue 2.) In June 2013, final judgment was entered against plaintiff. The judgment was later assigned to Ocwen Loan Servicing, LLC ("Ocwen"), a Delaware entity, the following year. (*Id.*) Ocwen retained Phelan Hallinan Diamond & Jones PC ("Phelan") to execute the judgment.[1] (Judith T. Romano Decl., Mar. 24, 2016, ECF No. 23–2 ("Romano Decl. I") ¶ 4.) The loan was subsequently sold to LSF9, and the servicing for the loan was transferred to Caliber Home Loans ("Caliber"). (LSF9's Mem. Supp. Mot. Trans. Venue 2.)

On January 14, 2016, plaintiff commenced this action, asserting claims under the federal Fair Debt Collection Practices Act ("FDCPA") arising from defendants' debt collection activities.[2] (Compl., ECF No. 1 at 1.)

---

1. Plaintiff asserted in his complaint that OneWest, not Ocwen, retained Phelan. (Am. Compl. ¶ 8.) However, plaintiff did not contest Phelan's clarification that it was Ocwen, not OneWest, that retained it. (Judith T. Romano Decl. ("Romano Decl. II"), ECF No. 30–1, ¶ 6.)

2. On February 3, 2016, plaintiff submitted an Amended Complaint, asserting the same. (Am. Compl., ECF No. 6.)

On March 24, 2016, defendant Phelan, a law firm domiciled and with its principal place of business in New Jersey, moved to dismiss the claim against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Phelan's Mem. Supp. Mot. Dismiss 3, 9.) Phelan also requested the Court award Phelan its legal fees and costs, alleging plaintiff's Complaint was frivolous and filed in bad faith. (Phelan's Mot. Sanctions, ECF No. 24; Phelan's Mem. Supp. Mot. Sanctions, ECF No. 24–1 at 1.)

On March 25, 2016, defendant LSF9 Master Participation Trust ("LSF9") moved to transfer the venue of this action to the United States District Court for the District of New Jersey ("District of New Jersey") pursuant to 28 U.S.C. § 1404(a), arguing that no connection exists between the parties or the allegations in this case and the State of New York, that the District of New Jersey is the locus of the operative facts of the case, and that the District of New Jersey is a more convenient forum. (LSF9's Mem. Supp. Mot. Trans. Venue 1, 4.)

For the reasons stated below, the Court concludes that it does not have personal jurisdiction over Phelan. However, the Court does not grant Phelan's motion to dismiss. Instead, the Court transfers the instant case to the District of New Jersey under the authority of 28 U.S.C. §§ 1404(a) and 1406(a). Further, the Court denies Phelan's motion to impose sanctions on plaintiff.

## DISCUSSION

### I. PERSONAL JURISDICTION OVER DEFENDANT PHELAN

#### A. Applicable Law

#### 1. Standard for a Rule 12(b)(2) Motion

■ On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). However, prior to discovery, the plaintiff "need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials" to defeat the motion. *Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir. 1988) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). Furthermore, in considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 85 (2d Cir. 2001). However, a plaintiff's "unsupported allegations" can be rebutted by "direct, highly specific, testimonial evidence . . . ." *Schenker v. Assicurazioni Genereali S.p.A., Consol.*, No. 98 Civ. 9186 (MBM), 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002).

### 2. C.P.L.R. § 301 and § 302

■ As a threshold matter, "[i]n a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citation omitted). Because the FDCPA does not provide for national service of process, New York's Civil Practice Law and Rules ("C.P.L.R.") §§ 301 and 302 govern the instant action. *See id.*; *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000).[3]

■ Under N.Y. C.P.L.R. § 301, New York's general jurisdiction statute, a court

---

**3.** Were the Court to find that "the exercise of jurisdiction is appropriate under that statute,

may exercise general personal jurisdiction over a non-domiciliary corporation that is "doing business" in New York. *See McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). The "doing business" standard is "stringent, because a defendant who is found to be doing business in New York in a permanent and continuous manner may be sued in New York on causes of action wholly unrelated to acts done in New York." *Overseas Media, Inc. v. Skvortsov,* 407 F.Supp.2d 563, 567–68 (S.D.N.Y. 2006). A corporation is "doing business" in New York "if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir. 1985) (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, (1917)); *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 95 (2d Cir. 2000) (quoting *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1990)). To determine whether a foreign corporation is doing business in New York, courts focus on a set of common factors, including: whether the company has an office in the state; whether it has any bank accounts or other property in the state; whether it solicits business in the state; whether it has a phone listing in the state; whether it does public relations work in the state; and whether it has individuals permanently located in the state to promote its interests. *See Wiwa,* 226 F.3d at 98 (citing *Hoffritz,* 763 F.2d at 58; *Frummer v. Hilton Hotels Intern., Inc.,* 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967))); *Sound Around Inc. v. Audiobahn, Inc.,* No. 07 CV 773 (RJD) (CLP), 2008 WL 5093599, at *4 (E.D.N.Y. Nov. 24, 2008). However, these factors are only intended to provide guidance—they do not amount to a "formula" for testing jurisdiction. As the Second Circuit has noted, "[t]here is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; courts should assess the defendant's contacts *as a whole.*" *Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 570 (2d Cir. 1996); *see also Wiwa,* 226 F.3d at 95 (finding a fact-specific inquiry is necessary to determine whether a corporation's contacts with New York demonstrate "continuous, permanent and substantial activity" (quoting *Landoil Res. Corp.,* 918 F.2d at 1043)).

Under N.Y. C.P.L.R. § 302, New York's long-arm statute,

> a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

▆ Notably, while the statute provides that the acts of an agent in a given forum

---

the court must then decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir. 1997). However, for the reasons stated herein, the Court finds the exercise of jurisdiction is not warranted under New York's C.P.L.R.

may lead a court to find jurisdiction over its principal in that forum, the opposite is not true: When "an agent provides services to a principal," it is not the case that "any state in which the principal does business should be able to assert jurisdiction over that principal's agent . . . ." *Birmingham Fire Ins. Co. of Pennsylvania v. KOA Fire & Marine Ins. Co., Ltd.*, 572 F.Supp. 962, 967 (S.D.N.Y. 1983). Thus, in New York, where the agent's services are not related in any way to the principal's contacts in the state, any claim of personal jurisdiction in the state as to the principal cannot extend to the agent by virtue of the principal-agent relationship.

## B. Analysis

■ As set forth below, the Court concludes that it does not have personal jurisdiction over Phelan.

### 1. Personal Jurisdiction Does Not Exist Over Phelan Under § 301 or § 302

Phelan is domiciled and has its principal place of business in New Jersey. Phelan has not had any contact with Ocwen in New York or with any other defendant in this matter in this District.[4] (Romano Decl.

II ¶ 6.) There has been no "factual allegation suggesting, much less demonstrating, how Phelan actually has any contact whatsoever with New York . . . ." (Phelan's Mem. Supp. Mot. Dismiss 1.) The only factual allegations that plaintiff set forth regarding Phelan's contacts with New York are that one of its attorneys is admitted to practice there and that Ocwen, its principal, does business there.[5] This does not meet the stringent "doing business" standard imposed by C.P.L.R. § 301, nor does it meet the C.P.L.R. § 302 requirement of showing that a defendant either (1) transacts any business within the state or contracts anywhere to supply goods or services in New York or (2) commits a tortious act either within New York or causing injury to person or property within New York. Every action plaintiff has imputed to Phelan in connection with this case occurred in New Jersey. Therefore, this Court cannot exert personal jurisdiction over Phelan under either C.P.L.R. §§ 301 or 302.

### 2. Personal Jurisdiction Does Not Exist Over Phelan by Virtue of Its Relationship with Ocwen

Plaintiff's main argument as to why the Court has personal jurisdiction over Phe-

---

4. Further, Phelan asserts that Ocwen, through its Florida office, retained Phelan through its Pennsylvania office, and that Phelan's "contacts with Ocwen and Caliber have been through electronic means with their offices outside of this District." (Romano Decl. II ¶ 6.) Plaintiff does not dispute this assertion. Therefore, there is no indication that Phelan made any contact with New York when it was retained by OneWest.

5. Plaintiff also repeats some of the allegations set forth in his Complaint, namely that (1) OneWest and Ocwen "undertook an ongoing collection campaign via the US mail by sending out monthly collection statements . . . and a variety of other notices which contained material misleading information," (2) Ocwen telephoned the plaintiff, (3) Caliber sent debt collection notices to plaintiff, (4) Phelan rep-

resented OneWest in the foreclosure action, and (5) Phelan "undertook to collect debt through communications dispatched through the mail." (Pl. Resp. Mot. Dismiss 4–7.) Plaintiff also notes that Phelan has an office in Philadelphia. (Pl. Resp. Mot. Dismiss 11.) These points are not relevant to finding personal jurisdiction exists over Phelan in New York. With respect to the various communications plaintiff outlined, LSF9 rightly points out that, because plaintiff resides in New Jersey, "all correspondence and other communications that are allegedly at issue here would have been sent or made to Plaintiff at his New Jersey address." (LSF9's Reply Mot. Trans. Venue, ECF No. 29 at 4.) Further, there is no indication that any of defendants' communications were dispatched from New York.

lan is that Phelan is the agent of a principal, Ocwen, that does business in New York. In his opposition to the motion to dismiss, plaintiff seeks to support his argument that personal jurisdiction exists in this District over Phelan through an agency theory in part by substantiating his claim that personal jurisdiction exists over the other defendants. (Pl. Resp. Mot. Dismiss, ECF No. 28 at 2.)

However, as explained above, where an agent's services are not related in any way to the principal's contacts in New York, any claim of personal jurisdiction as to the principal cannot extend to the agent by virtue of the principal-agent relationship. *Birmingham Fire Ins. Co. of Pennsylvania v. KOA Fire & Marine Ins. Co., Ltd.*, 572 F.Supp. 962, 967 (S.D.N.Y. 1983). As noted, Phelan did not have any contact with New York, nor did it have any contact with Ocwen or with any other defendant in this matter in New York. (Romano Decl. II ¶ 6.) Plaintiff has made no allegation that any of Phelan's conduct or services were connected in any way to New York. In light of this, personal jurisdiction does not exist over Phelan regardless of whether any of the other defendants have had contacts with New York.

### 3. Pendent Personal Jurisdiction Does Not Exist in This Case

Plaintiff's remaining argument is that this Court should retain jurisdiction in New York based on the principles set forth in *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716 (2d Cir. 1980). There, the Second Circuit outlined courts' power to exert pendent personal jurisdiction. According to plaintiff, the reasoning in *Hargrave* should lead the Court to conclude that, in the instant action, because (1) "the subject underlying loan and location of the premises" are "merely incidental to the claims alleged against the defendants under the FDCPA," and (2) "plaintiff's claims arise out of a common set of facts and circumstances as alleged under the FDCPA," it has pendent personal jurisdiction over Phelan. (Pl. Resp. Mot. Dismiss 15.) At oral argument, plaintiff stressed the important policy objectives behind the FDCPA in arguing that this Court should retain jurisdiction over Phelan.

■ Personal jurisdiction does not exist under the doctrine of pendent personal jurisdiction in this case. Under that doctrine, "where a federal statute authorizes nationwide service of process, and the federal and state claims 'derive from a common nucleus of operative fact,' ... the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993). As stated above, the FDCPA does not authorize a national service of process, making *Hargrave* and the doctrine of pendent personal jurisdiction inapplicable in this case. Although the Court acknowledges the important policy objectives behind the FDCPA, it notes, as it did during oral argument, that Congress did not create a special set of jurisdictional rules for the FDCPA and, as such, it is not within this Court's power to ignore the restrictions on its ability to exercise personal jurisdiction over defendants such as Phelan.

In sum, the FDCPA claim in this case centers on the defendants' alleged conduct with respect to the servicing of the loan, and, based on the allegations in the Amended Complaint, that conduct occurred exclusively in the District of New Jersey. Further, as discussed above, there has been no indication that Phelan—either generally or with respect to this case—has had any contacts with the State of New York. Therefore, plaintiff has failed to

make a prima facie showing of personal jurisdiction over Phelan, and there is no basis on which this Court can exercise personal jurisdiction over it.

## II. Transfer of Venue

### A. Applicable Law

■ Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) is intended "to prevent waste of 'time, energy and money' and 'to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense.'" *MasterCard Int'l Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *5 (S.D.N.Y. June 16, 2004) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

■ "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *accord Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992).

Even though this Court lacks personal jurisdiction over Phelan, it may nevertheless transfer this case to the District of New Jersey if (1) both jurisdiction and venue are proper there as to all defendants, and (2) if such transfer would be in the interest of justice. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *see Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 79 (2d Cir. 1978) (" 'The language of

§ 1406(a) is amply broad enough to authorize the transfer of cases ... whether the court in which it was filed had personal jurisdiction over the defendants or not.' ") (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)); *Interested London Underwriters v. Kelly Global Logistics, Inc.*, No. 06 Civ. 5845 (PKL), 2008 WL 558038, at *5 (E.D.N.Y. 2008); *Hatfield v. Asphalt Int'l, Inc.*, No. 03 Civ. 1372, 2004 WL 287680 (S.D.N.Y. Feb. 11, 2004) ("The decision to transfer rather than dismiss 'lies within the sound discretion of the district court,' keeping in mind the general purpose of § 1406's transfer provision is to 'remov[e] whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits.' ") (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993); *Goldlawr, Inc.*, 369 U.S. at 466–67, 82 S.Ct. 913).

There would be personal jurisdiction over all defendants in New Jersey. Under New Jersey law, courts may exercise personal jurisdiction over parties so long as such an exercise is consistent with due process of law. N.J. Stat. Ann. § 4:4-4 (West 2016). As discussed, Phelan is domiciled and has its principal place of business in New Jersey. The remaining defendants either owned or serviced the mortgage on the New Jersey property in question. Finally, plaintiff is a resident of New Jersey. Therefore, there would be personal jurisdiction over all defendants in New Jersey.

■ Transfer would also be in the interest of justice. Courts generally consider the same factors when deciding whether to transfer pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). *See, e.g.*, *Bank of Am., N.A. v. Hensley Props., LP*, 495 F.Supp.2d 435, 440 (S.D.N.Y. 2007). Those factors are: (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would "promote the

convenience of parties and witnesses and would be in the interests of justice." *Clarendon Nat'l Ins. Co. v. Pascual*, No. 99 Civ. 10840 (JGK)(AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000).

The parties do not dispute that this action could have been brought in the District of New Jersey.[6] In assessing whether the transfer is in the interests of justice, the Second Circuit has summarized some of the factors that a district court is to consider in the exercise of its discretion:

> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co., Inc.*, 462 F.3d at 106–107. Some courts have identified additional factors, including (1) "the forum's familiarity with governing law," and (2) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Albert Fadem Trust v. Duke Energy Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002); *accord In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F.Supp.2d 164, 167–68 (E.D.N.Y. 2006); *see also Dealtime.com v. McNulty*, 123 F.Supp.2d 750, 755 (S.D.N.Y. 2000) (collecting cases).

There is no strict formula for the application of these factors, and no single factor is determinative. *See, e.g., Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, No. 04–CV–629 (ARR)(ASC), 2004 WL 1812821, at *4 (E.D.N.Y. July 19, 2004); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F.Supp.2d 395, 402 (S.D.N.Y. 2005). Instead, these factors should be applied and weighed in the context of the individualized circumstances of the particular case. The moving party, LSF9 here, bears the burden of making a showing that transfer is warranted in light of these factors.[7] *See O'Hopp v. ContiFinancial Corp.*, 88 F.Supp.2d 31, 34 (E.D.N.Y. 2000) (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)).

### B. Analysis

In light of the following analysis of the factors delineated above, the Court grants LSF9's motion to transfer.

### 1. Plaintiff's Choice of Forum

It is well settled that the plaintiff's choice of forum is "given great weight." *D.H. Blair & Co., Inc.*, 462 F.3d at 107 (citation omitted). Thus, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States*, 998 F.Supp. 351, 353 (S.D.N.Y. 1998) (citations omitted). Howev-

---

6. None of the other parties—Phelan, Ocwen, Caliber, and OneWest—have submitted papers on LSF9's motion to transfer.

7. Plaintiff misstates the burden imposed on a party moving for a transfer of venue. In his memorandum in opposition to the transfer, he states that "[a] party moving to change venue must show 'extraordinary inconvenience such that defendant will be precluded from defending the action if the case were not transferred,'" citing *Elite Parfums Ltd. v. Rivera*,

872 F.Supp. 1269 (S.D.N.Y. 1995). (Pl. Mem. Opp. 4.) The standard enunciated in *Elite Parfums* does not apply to motions for venue transfers generally, but instead to motions for venue transfers that are made when a forum selection clause is in place and the lawsuit has been initiated in the forum called for in the forum selection clause. *Elite Parfums Ltd.*, 872 F.Supp. at 1272. There is no forum selection clause at issue in this case. Therefore, LSF9 does not face this heightened burden.

er, courts have noted that the weight given to this factor is significantly diminished where none of the operative facts occurred in the forum chosen by plaintiff. *See, e.g., Wagner v. N.Y. Marriott Marquis*, 502 F.Supp.2d 312, 317 (N.D.N.Y. 2007) ("The presumption favoring plaintiff's choice of forum, however, is not so rigidly applied where, as here, the cause of action arose outside the forum . . . .") (citation omitted); *Royal Ins. Co. of Am.*, 998 F.Supp. at 353 ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however where the operative facts have no connection to the chosen district."); *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 990 (E.D.N.Y. 1991) ("[W]here the transactions or facts giving rise to the action have no material relation or significant connection to plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance."). This factor is also accorded less significance when plaintiff "does not reside in the chosen forum." *Speedfit, LLC v. Woodway U.S., Inc.*, 53 F.Supp.3d 561, 575–76 (E.D.N.Y. 2014) (citation omitted).

As explained *infra*, none of the operative facts of this case occurred in New York,[8] and plaintiff does not reside in New York. Therefore, the weight of this factor is significantly diminished.

#### 2. Convenience of Witnesses

▓▓▓ In deciding whether to disturb the plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis. *See, e.g., DLJ Mortgage Capital, Inc. v. Cameron Fin. Group, Inc.*, No. 07 Civ. 3746 (LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007) ("[T]he convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a)."); *accord Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 329 (E.D.N.Y. 2006); *Wagner*, 502 F.Supp.2d at 315; *see also Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F.Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. . . . Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district.") (citations omitted).

Although movants generally submit detailed factual statements explaining why a transferee forum is more convenient for witnesses, LSF9 does not discuss the convenience of the witnesses extensively, nor does it provide such factual statements. LSF9 notes that Phelan is located solely in New Jersey, "making all of its employees (and potential witnesses) and evidence also located in New Jersey," and, in concluding that New Jersey is a much more convenient forum, states generally that "the witnesses are located in New Jersey."[9]

---

8. In fact, as discussed *infra*, "Plaintiff's sole connection to this District is the presence of his attorney." (LSF9's Reply Mot. Trans. Venue 1.)

9. Plaintiff has characterized this as "wholly fail[ing] to demonstrate any inconvenience of its witness [sic]." Plaintiff argues that movants are required to "identify with specificity the witnesses it intends to call at trial and the general content of their proposed testimony." (Pl. Resp. Opp. Mot. Trans. Venue 3 (citing *U.S. Fidelity and Guar. Co. v. Republic Drug*

*Co., Inc.*, 800 F.Supp. 1076, 1080–81 (E.D.N.Y. 1992)). However, the case on which plaintiff relies states that such a particularized demonstration is only required when the transfer is being sought "based on" the convenience of the witnesses. *U.S. Fidelity and Guar. Co.*, 800 F.Supp. at 1081. As discussed, there are many factors—none of which is dispositive—that courts must consider in deciding transfer motions, and LSF9 does not rely exclusively on the convenience of witnesses. Therefore, LSF9's lack of focus on this factor is not fatal to its motion for transfer.

(LSF9's Mem. Supp. Mot. Trans. Venue 6.) At oral argument, LSF9 conceded that this factor may be neutral between New York and New Jersey.

Absent any factual demonstration by either LSF9 or plaintiff that their chosen forum is more convenient for any potential witnesses, the Court finds this factor neutral.

### 3. Location of Documents

With respect to the location of documents, the relevant documents—including records of the mortgage on the New Jersey property, the assignment of the mortgage to OneWest, the assignment of the mortgage to Ocwen, OneWest's foreclosure Complaint against plaintiff, and the final judgment against plaintiff on that action— are located in New Jersey. Although this factor thus favors transfer, the Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production. *See, e.g., Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge North Am., Inc.*, 474 F.Supp.2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *Distefano v. Carozzi North Am., Inc.*, No. 98 CV 7137 (SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, ... modern photocopying technology deprives this issue of practical or legal weight.").

### 4. Convenience of the Parties

■ The Court recognizes that " '[w]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave plaintiff's choice of venue undisturbed." *See Wagner*, 502 F.Supp.2d at 316 (quoting *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F.Supp. 174, 182 (W.D.N.Y. 1997)); *accord Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F.Supp. 1314, 1322 (S.D.N.Y. 1989). In the present action, however, the Court finds that instead of shifting inconvenience, transfer in this case would actually be more convenient for LSF9, the plaintiff, and at least one of the other defendants (Phelan).[10]

■ In evaluating the convenience of the parties, "[t]he logical and relevant starting point is a consideration of the residence of the parties," and there is naturally a presumption that the location of a party's residence is a convenient forum for that party. *Wine Markets Intern., Inc. v. Bass*, 939 F.Supp. 178, 182 (E.D.N.Y. 1996). As stated *supra*, plaintiff is a New Jersey resident (Phelan's Mem. Supp. Mot. Dismiss 1, 3), and, thus, New Jersey can be assumed to be a convenient forum for the plaintiff. Plaintiff does not contest this.[11] Of the defendant entities, only Phe-

10. The Court has no indication that the District of New Jersey would be a more (or less) convenient forum than New York with respect to any of the other parties.

11. Instead, plaintiff focuses on the convenience of his counsel: "[D]ue to geographical constraints and the fact that his attorney is a sole practitioner, it would be extremely burdensome for plaintiff and his attorney to litigate this case in New Jersey." (Pl. Resp. Opp.

Mot. Trans. Venue 5.) This Court notes that the convenience of the parties' counsel is not an appropriate consideration when evaluating the "convenience of the parties" factor, and thus, does not address it here. *See Zaitsev v. State Farm Fire & Cas. Co.*, No. 05–CV–2008 (ILG), 2005 WL 3088326, at *3 (E.D.N.Y. Nov. 17, 2005) ("[T]he convenience of a parties' attorney, in and of itself, should not be considered [when considering the convenience of the parties].") (citation omitted).

lan is domiciled with its principal place of business in New Jersey (Phelan's Mem. Supp. Mot. Dismiss 3), but none of the other defendants, including, of course, movant LSF9, oppose a transfer of venue. Thus, this Court finds that the "convenience of the parties" factor favors transfer.

### 5. Locus of Operative Facts

The following facts are undisputed in this case: (1) plaintiff resides in New Jersey; (2) the debt being collected is the result of a judgment in a 2009 foreclosure action brought and litigated in the Superior Court of New Jersey; (3) "the claims raised in the Complaint before this Court concern the servicing of a loan made to Plaintiff"; (4) "the property involved in the foreclosure action is located in New Jersey"; and (5) the conduct at issue concerns "an ongoing collection campaign via the US mail" that plaintiff alleges contained "material and misleading information . . . ." (Pl. Resp. Mot. Dismiss 4; *see also* LSF9's Mem. Supp. Mot. Trans. Venue 1.)

In response to LSF9's emphasis on the numerous connections between this case and New Jersey, plaintiff argues that "the prior action involving the mortgage foreclosure action . . . has nothing at all to do with this proceeding" and is "irrelevant." (Pl. Resp. Opp. Mot. Trans. Venue 3.) In both his opposition to the motion to dismiss and the motion to transfer venue, plaintiff requests that this Court "view the present actions as one wholly distinct and separate from the state foreclosure action." (Pl. Resp. Mot. Dismiss 1.) He says that the instant action "addresses improper, fraudulent and/or illegal actions undertaken by the defendants *after* the state case was concluded in connection with their subsequent attempts to enforce that judgment and collect the debt owed thereunder." *Id.* (emphasis added). Plaintiff concludes that the location of the prior action

is therefore irrelevant. (Pl. Resp. Opp. Mot. Trans. Venue 3.)

Even setting aside the foreclosure action and the location of the mortgage property, all of the other facts of this case are tied to New Jersey. "[A]ll correspondence and other communications that are allegedly at issue here would have been sent or made to Plaintiff at his New Jersey address." (LSF9's Reply Mot. Trans. Venue 4; *see also, e.g.,* Exhibit D, Pl. Resp. Mot. Dismiss; Exhibit E, Pl. Resp. Mot. Dismiss; Exhibit H, Pl. Resp. Mot. Dismiss.) Thus, all evidence concerning the locus of operative facts overwhelmingly points to New Jersey as the appropriate venue.

### 6. Availability of Process to Compel the Attendance of Unwilling Witnesses

Rules 45(b)(2) and 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than 100 miles. Fed. R. Civ. P. 45. Because the parties have not identified the potential witnesses to this action, this Court is unable to conclusively determine whether process to compel the attendance of unwilling witnesses would be available.

### 7. Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 135 (S.D.N.Y. 1994); *see also Dwyer v. General Motors Corp.,* 853 F.Supp. 690, 693–94 (S.D.N.Y. 1994) (denying transfer where "[p]laintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets").

One of plaintiff's principal arguments against transfer is that, because of financial constraints, he is unable "to hire substitute counsel in New Jersey" and that, because "his attorney is a sole practitioner, it would be extremely burdensome for plaintiff and his attorney to litigate this case in New Jersey even [if] counsel was to submit a motion pro hac vice in New Jersey District Court." (Pl. Resp. Opp. Mot. Trans. Venue 5.) Plaintiff claims that, as a result, transferring the case would "fundamentally prejudice[ ]" plaintiff because he would need to find an attorney in New Jersey "who was admitted to Federal Court and would agree to represent him on a pro bono basis." *Id.* When the Court inquired about these issues at oral argument, plaintiff's counsel did not identify any obstacles to his obtaining *pro hac vice* status in the District of New Jersey. Having found the issue of *pro hac vice* to be non-existent, the Court concludes that the only difficulty that would be imposed on plaintiff by transfer to the District of New Jersey is that his attorney would need to travel from New York to New Jersey for required appearances.

 When there are financial difficulties posed by transfer to a plaintiff, the plaintiff is an individual, and the respective defendants are corporations, the "relative means of the parties" factor would generally favor denying the motion to transfer. However, courts typically consider the difficulty that is imposed on plaintiffs who are facing transfers to far-away forums, not their home forum. *E.g.*, *Romano v. Banc of America Insurances Services*, 528 F.Supp.2d 127, 133–34

(E.D.N.Y. 2007) (analyzing the financial burden on plaintiff to retain an out-of-state attorney and prosecute the matter long distance); *Rindfleisch v. Gentiva Health Systems, Inc.*, 752 F.Supp.2d 246 (E.D.N.Y. 2010) (determining that, "although the relative means of [individual] plaintiffs in contrast to a national company clearly favors plaintiffs," plaintiff failed to demonstrate that travel to the transferee forum would pose a significant burden relative to traveling to the transferor forum). Here, plaintiff is opposing transfer to his home forum and arguing that his means prohibit him from prosecuting his lawsuit there because his attorney would need to travel from New York to New Jersey (or he would need to find another attorney, which he has not been able to do thus far). The Court finds that the additional burden that would be imposed on counsel to travel to the District of New Jersey carries little weight.

In light of the foregoing, the Court determines that the "relative means of the parties" factor is neutral in this case.[12]

## C. Summary

In sum, although the Court recognizes that the plaintiff's choice of forum should not be disturbed unless the other factors weigh strongly in favor of transfer, the Court finds that defendant has met its burden in this case. Despite the fact that plaintiff's attorney may need to travel to New Jersey, the other factors—particularly that the locus of operative facts occurred entirely in New Jersey and that the only connection plaintiff has with this

---

**12.** The Court does not find—nor does either party argue—that the other factors relevant to transfer decisions generally are relevant to this case. The Court views the "forum's familiarity with governing law" as neutral in this case because the Court assumes that both district courts are equally familiar with, and capable of applying, the legal principles necessary to adjudicate plaintiff's case. *See Wagner*, 502 F.Supp.2d at 317. Similarly, the Court views both districts as fully capable of adjudicating plaintiff's claims in a timely manner.

District is that his counsel resides here—overwhelmingly support transfer. *See, e.g., Scott v. Life Investors Ins. Co. of Am.,* No. 2:07 CV 29, 2007 WL 3390012, at *3, *6 (N.D. W. Va. Nov. 13, 2007) (holding in case where plaintiff sought damages resulting from the defendants' failure to pay the accidental death benefit claims she filed following death of her husband, transfer to South Carolina was warranted because, with the exception of Plaintiff's relocation to the State of West Virginia following the death of the decedent, "the cause of action bears virtually no relation to the forum chosen by the Plaintiff"); *Black v. JCPenny Life Ins. Co.,* No. C 01–4070 (SI), 2002 WL 523568, at *3 (N.D. Cal. Apr. 1, 2002) (holding in case where plaintiff sought to recover benefits from an Accidental Death and Dismemberment Insurance policy issued to her mother, transfer to Southern District of California warranted because, among other things, "the transactions giving rise to [plaintiff's] action have no connection to the Northern District" and "the life insurance policy was purchased by the insured in the Southern District, she received all medical care there, and her death occurred there"). The Court concludes that the transfer of this case is in the best interest of the litigation.

Accordingly, after carefully considering the parties' submissions and the applicable law, the Court concludes in its discretion that the above-referenced factors, as well as the totality of the circumstances and the interest of justice, warrant transfer of this action to the District of New Jersey.

### III. SANCTIONS

By motion dated March 24, 2016, Phelan moves for sanctions against plaintiffs pursuant to Federal Rule of Civil Procedure. 11, for the costs incurred in having Phelan dismissed from this case. (Phelan's Mem. Supp. Mot. Sanctions.) Plaintiff opposes.

(Pl. Resp. Mot. Dismiss.) For the following reasons, the Court denies the motion.

### A. Applicable Law

Federal Rule of Civil Procedure 11 provides, *inter alia,* that, by submitting a signed pleading, motion, or other paper to the Court, a party or attorney "[is] certif[ying] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). To avoid the risk of sanctions under Rule 11, a party's counsel must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc.,* 403 F.Supp.2d 294, 307 (S.D.N.Y. 2005) (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

In considering a motion for sanctions under Rule 11, this Court applies an "objective standard of reasonableness." *See MacDraw v. CIT Grp. Equip. Fin., Inc.,* 73 F.3d 1253, 1257 (2d Cir. 1996) ("In evaluating whether the signer of a filing has violated Rule 11, the district court applies an objective standard of reasonableness, examining whether, under the circumstances of a given case, the signer has conducted a 'reasonable inquiry' into the basis of a filing."). "[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir. 1986). Additionally, "[w]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, ... courts [must] resolve all doubts in favor of the signer" of the pleading.

*Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

### B. Discussion

■ Phelan requests that this Court sanction plaintiff's counsel because it has "been forced to incur significant expenses to obtain dismissal of a case filed in a District with which it has no contacts." It argues sanctions are "a necessary and appropriate measure" both in terms of making Phelan whole and "to preserve the integrity and efficacy of the Courts and deter the filing of frivolous, bad faith pleadings like the Complaint." (Phelan's Mem. Supp. Mot. Sanctions 1.) Phelan provides further arguments in support of its motion in its reply memorandum, asserting, among other things, that plaintiff (1) named Phelan a defendant in this action despite the fact that Phelan's counsel had notified plaintiff that Phelan only does business in New Jersey and is not subject to jurisdiction in this District; (2) demonstrated a lack of familiarity with foreclosure practice; (3) failed to demonstrate the required diligence and knowledge of applicable law before filing the Complaint; (4) falsely claimed that Phelan "routinely threatens and seeks sanctions in many of the lawsuits in which it is involved as a means of intimidation"; and (5) made a number of irrelevant and/or inaccurate representations in its opposition to Phelan's motion to dismiss. (Phelan's Reply Mot. Dismiss 7–15.)

In his defense, plaintiff asserts that its efforts were not so "unreasonable as to rise to sanctionable conduct." (Pl. Resp. Mot. Dismiss 17.)

Under these circumstances, the Court concludes that there has been no particularized showing of bad faith or frivolous conduct by plaintiff, or any other grounds for sanctions. Although this Court agrees that it is unable to exercise personal jurisdiction over Phelan as argued by plaintiff and that Phelan's actions vis-à-vis other lawsuits are not objectionable, that is not enough to justify sanctions under Rule 11, much less under the Court's inherent power or pursuant to 28 U.S.C. § 1927. *See, e.g., Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("The positions advanced by [plaintiff] and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against."); *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03–CV–1851 (NGG), 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak."); *Eisenberg v. Yes Clothing Co.*, No. 90 CIV. 8280 (JFK), 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak."); *see also Harris v. SCA Rest. Corp.*, No. 09–CV–2212 (JFB)(ETB), 2014 WL 996249, at *3 (explaining that to award attorneys' fees under inherent power, there must be a particularized showing of bad faith).

In sum, there is no evidence that plaintiff named Phelan as defendant in this suit or made any of the allegations its memorandum in opposition in bad faith, and his legal arguments (including his unsuccessful efforts to have the *Hargrave* decision extended to this situation) are not so untenable as to be deemed frivolous. Accordingly, in its discretion, the Court denies Phelan's motion for sanctions.

### IV. CONCLUSION

For the reasons set forth above, the Court finds no personal jurisdiction over

Phelan, but transfers the case to the District of New Jersey (rather than granting dismissal). Further, the Court grants LSF9's motion to transfer. The Clerk of this Court shall transfer this case to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). Phelan's motion for sanctions is denied.

SO ORDERED.